740 N.W.2d 807 (2007)
16 Neb. App. 1
Mary KOTLARZ and David Kotlarz, Appellants and Cross-Appellees
v.
OLSON BROS., INC., a Nebraska corporation, Appellee and Cross-Appellee, and Powers-Meyers-Carlisle, a project-specific joint venture, Appellee and Cross-Appellant.
No. A-05-1247.
Court of Appeals of Nebraska.
October 9, 2007.
*809 James E. Harris, Britany S. Shotkoski, and Michaela Skogerboe, of Harris Kuhn Law Firm, L.L.P., Omaha, for appellants.
Jerry W. Katskee and Melvin R. Katskee, of Katskee, Henatsch & Suing, Omaha, for appellee Olson Bros., Inc.
P. Shawn McCann, of Sodoro, Daly & Sodoro, P.C., Omaha, for appellee Powers-Meyers-Carlisle.
IRWIN, SIEVERS, and CASSEL, Judges.
*810 SIEVERS, Judge.
Mary Kotlarz and David Kotlarz appeal the order of the district court for Douglas County granting summary judgment in favor of Olson Bros., Inc. (Olson), and Powers-Meyers-Carlisle, a project-specific joint venture (PMC) (collectively Appellees). We find that summary judgment was not proper as to defendant Olson, and therefore, we reverse, and remand the cause as to such defendant. With respect to defendant PMC, we sustain the grant of summary judgment and dismissal of the cause, although on the basis of the statute of limitations as raised in PMC's cross-appeal.

FACTUAL BACKGROUND
Viewed in a light most favorable to the Kotlarzes, the record reflects the following facts: On March 30, 1999, Mary attended a physical therapy session at Alegent Health Lakeside Clinic (the Clinic) located in Omaha. The property was under construction, but it was open to the public. On March 30, there was no construction work being performed on the premises, or in the area where Mary parked, because it was an extremely windy day with wind gusts of around 45 miles per hour.
Around 5 p.m., after her physical therapy appointment, Mary, carrying a traction device, walked to her car, opened her trunk with a key, and placed the traction device in her car. Mary's car was facing north at the time. During this time, Mary did not notice anything blowing around in the wind. As she was closing the trunk, there was a gust of wind, and Mary felt a sharp blow to the base of her neck on the left side and then "excruciating pain." Mary did not know where the object came from, she did not see what hit her, and there were no eyewitnesses. Nevertheless, immediately after she felt the sharp blow to her neck, she saw a piece of 4-by 8-foot foam sheet, which did not appear to be damaged, fly through the air in front of her. Mary then walked back to the Clinic, and while she was walking back, she saw three foam sheets in the parking area which appeared to be the same as the foam sheet that she saw after she was struck. Mary went inside the Clinic, reported that she had been hit and that there was debris flying around outside, and then was treated for her injuries. Mary's son arrived shortly thereafter and retrieved a piece of foam sheet he found in the parking lot. Mary said that the piece of foam sheet recovered by her son was the same composition as the foam sheet that she saw right after being struck, as well as being the same as the three foam sheets Mary observed as she returned to the Clinic after the incident.
PMC was the general contractor for the building project at Alegent Health Lakeside Wellness Center (Alegent), which was located adjacent to the Clinic. PMC is a project-specific joint venture between Power Construction Company, an Illinois corporation, and Meyers-Carlisle Construction Company, a corporation qualified to do business in Nebraska. Olson was the roofing subcontractor for the building project.

PROCEDURAL BACKGROUND
On March 26, 2003, the Kotlarzes filed a complaint in the district court for Douglas County alleging that the Appellees' negligence caused injuries to Mary and that David suffered from a resulting loss of consortium due to Mary's injuries. The complaint named Olson and "Meyers-Carlisle-Leapley Construction Co., Inc[.,] f/k/a Powers-Meyers-Carlisle" as defendants. The complaint alleged that on March 30, 1999, Mary was injured by a piece of construction material, a "4' × 8' piece of foam board," which was not properly *811 secured at the construction site and which was blowing around due to strong winds at the time Mary was closing the trunk of her car. Among the allegations of negligence, the complaint stated that the Appellees failed to take and enforce adequate safety precautions and to properly secure the roofing materials.
"Meyers-Carlisle-Leapley Construction Company, Inc., f/k/a Powers-Meyers-Carlisle," filed an answer to the complaint denying any negligence. Olson's answer admitted that the winds on March 30, 1999, were "unusually strong" and that it was engaged in roofing work at the Alegent site, but Olson denied any negligence.
On August 4, 2003, the Kotlarzes and "Meyers-Carlisle-Leapley Construction Company, Inc., f/k/a Powers-Meyers-Carlisle," filed a stipulation agreeing that such party name was a misnomer and stating that "`Powers-Meyers-Carlisle, a Project-Specific Joint Venture'"PMCshould be substituted in its place. Part of the stipulation provided that PMC was making a voluntary appearance and waiving service of process, and it was provided that PMC would have 14 days in which to answer the suit. The district court granted the stipulation.
In late August 2004, Olson filed a motion for summary judgment. On September 3, PMC filed a motion for summary judgment, alleging both that the Kotlarzes were not entitled to judgment as a matter of law and that the Kotlarzes' complaint was barred by the applicable statute of limitations. Also on September 3, PMC filed an answer and cross-claim admitting that it was the general contractor for the Alegent project; denying any negligence on its part; admitting that on March 30, 1999, Mary was attending a physical therapy appointment at the Clinic; and asserting that all construction material had been secured on the day of her appointment. PMC cross-claimed against Olson, stating that PMC had entered into a subcontract agreement with Olson for the roofing work at the premises, and prayed for contribution or indemnity against Olson in the event that PMC was found liable for all or part of the Kotlarzes' damages.
Additionally, the affidavit of Stanley Stanek, an Olson employee, was received into evidence. Stanek said that on March 30, 1999, construction was postponed because of high winds, and that in the morning, he and another employee secured "all Olson roofing materials stacked near the southwest corner of the building," making certain that the materials were "covered by a tarp and weighted by tires." Stanek also said that there was ongoing construction at properties around the Alegent site, but that he did not know whether construction was ceased at those sites on March 30. Stanek further stated he could not say that the "broken piece of foam board" recovered by Mary's son "was product that we used on the subject project or that it came from an area of the construction site under Olson's control or that of the general contractor, PMC." In attempting to contradict PMC's affirmative defense that the "accident that occurred was a result of the negligence of other persons or entities" and in response to Stanek's affidavit stating that there was construction ongoing at the properties around and adjacent to the Alegent site, Mary produced a report from a consulting meteorologist stating, within a "reasonable degree of meteorological certainty," that on March 30, the wind was from the south, gusting to around 45 miles per hour. The meteorologist opined that it was "unlikely that foam boards from [another] construction site, located approximately .4 miles to the northwest of the incident site, were the ones that struck [Mary]"; it was "highly probable that the insulation/foam board *812 that struck [Mary] blew from the stock pile of foam board located . . . south of the incident site"; and "based on the fact that the car of [Mary] was facing north and the rear of her car was facing south, the wind which was from the south could have blown the trunk open, but not shut."
On May 24, 2005, the district court sustained the motions for summary judgment and dismissed the Kotlarzes' complaint. The district court found:
[V]iewing the evidence in [Mary's] favor and giving her the benefit of any inferences from the evidence, a fact-finder would have to guess at the possible cause of the accident. Simply put, Mary. . . doesn't know what, if anything, hit her to cause pain in her shoulder and neck area. She saw a piece of foam construction sheet fly past her, but she doesn't know if that foam sheet actually hit her and she doesn't know where it came from. There is no evidence that contradicts the Olson employee's sworn statement that he helped secure all the construction materials at the site on that day and that Olson may not have actually used the type of foam board retrieved from the parking lot. There also is evidence of other construction activity going on in the area.
. . . .
. . . [T]o accept [Mary's] allegations as creating a fact issue, the court must resort to guess, speculation, conjecture, or a choice of possibilities. The court must guess that the foam construction sheet that Mary . . . saw fly past her actually hit her, when [she] herself cannot positively say so. The court must then speculate that the piece of the foam retrieved by [Mary's] son was the actual foam sheet that may or may not have hit [Mary] and may or may not have flown past her, without the benefit of any supporting evidence. The court must then accept that the foam sheet somehow came loose from the weighted tarp at the [Appellees'] construction site because it was not properly secured, again, without any such evidence.
After some maneuvering, that we need not detail here, a final order was entered, and the Kotlarzes have timely appealed.

ASSIGNMENTS OF ERROR
The Kotlarzes contend, restated and consolidated, that the trial court erred in finding that no genuine issue of material fact exists and in granting summary judgment in favor of the Appellees. On cross-appeal, PMC contends that the district court erred in failing to grant PMC's motion to dismiss and in failing to grant summary judgment based upon the statute of limitations.

STANDARD OF REVIEW
Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Bennett v. Labenz, 265 Neb. 750, 659 N.W.2d 339 (2003). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.
A question of law raised in the course of consideration of a motion for summary judgment, as with any question of law, must be decided by the appellate court without reference to the decision of the trial court. See Essen v. Gilmore, 259 Neb. 55, 607 N.W.2d 829 (2000).

*813 ANALYSIS
We begin with some general principles of law. The mere happening of an accident is insufficient as a matter of law to prove negligence. Parker v. Lancaster Cty. Sch. Dist. No. 001, 256 Neb. 406, 591 N.W.2d 532 (1999). An allegation of negligence is insufficient where the finder of fact must guess the cause of the accident. Id. On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. Goff-Hamel v. Obstetricians & Gyns., P.C., 256 Neb. 19, 588 N.W.2d 798 (1999). Where reasonable minds differ as to whether an inference supporting the ultimate conclusion can be drawn, summary judgment should not be granted. Schade v. County of Cheyenne, 254 Neb. 228, 575 N.W.2d 622 (1998). Moreover, a party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. Marksmeier v. McGregor Corp., 272 Neb. 401, 722 N.W.2d 65 (2006). Once the moving party makes a prima facie case, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. Id.
Mary's lawsuit rests on the following premises: (1) Mary was struck with a foam sheet, (2) the foam sheet was from the construction site being worked by the Appellees, and (3) the Appellees failed to secure the foam sheets at the site in the face of unusually high winds. The district court's decision, and in turn the Appellees' argument to this court, is based largely on the fact that no one saw an object hit Mary, and Mary herself does not "know" what hit her. In considering the Appellees' arguments, we bear in mind that on a summary judgment motion, Mary gets the benefit of the evidence viewed most favorably to her, including reasonable inferencesand key factual propositions may be present (for summary judgment purposes) simply by reasonable inference. The Appellees' argument and the district court's decision appear to disregard the notion that circumstantial evidence is not inherently less probative than direct evidence. See State v. Castor, 262 Neb. 423, 632 N.W.2d 298 (2001).
The district court relied upon Swoboda v. Mercer Mgmt. Co., 251 Neb. 347, 557 N.W.2d 629 (1997), in granting the summary judgment. In Swoboda, an elderly woman, Marie Swoboda, was injured when she fell on a stairway landing; she could not remember the circumstances of the fall, and there were no eyewitnesses. Swoboda's granddaughter, who was with her at the time, did not observe the fall itself, but only saw Swoboda sitting on the floor with her legs extended down the ramp that led from the landing. There was evidence that Swoboda did not have trouble walking prior to the fall and that the ramp's configuration was in violation of building codes. The district court granted summary judgment, reasoning that Swoboda's allegation that the ramp caused her fall was based solely on speculation and conjecture and that therefore, no genuine issue of material fact existed. The Nebraska Supreme Court upheld the district court's grant of summary judgment, stating that while circumstantial evidence may be used to prove causation, the evidence must be sufficient to fairly and reasonably justify the conclusion that the defendant's negligence was the proximate cause of the plaintiff's injury. The Supreme Court further stated that while Swoboda was not required to eliminate all alternate theories regarding how the accident may have happened, she was "required to establish with a reasonable probability that the accident *814 happened in the manner alleged in her petition." Id. at 351, 557 N.W.2d at 632. The Supreme Court concluded that because there was no "basis" upon which a finder of fact could determine whether Swoboda tripped over the ramp which violated building codes or simply tripped on the top step, the evidence was insufficient as a matter of law to create an inference that the ramp was the proximate cause of the fall. Id. at 352, 557 N.W.2d at 632. The court explained that a jury would be presented with at least two possibilities of the cause for her fall, but that the evidence "leaves the jury with the prospect of guesswork as to which of these possibilities actually caused Swoboda's injuries." Id. at 352-53, 557 N.W.2d at 633. In contrast to Swoboda, supra, Mary has provided a basis for a jury to determine how her injury occurred, although her chain of causation is admittedly circumstantial evidence. Whether a jury would accept the chain of circumstantial evidence is not the issue on this motion for summary judgment. In Swoboda, a jury would have no evidentiary basiscircumstantial or direct upon which to decide that the out-of-code ramp was the cause of the fall, but this record presents a different case.
Additionally, the Kotlarzes correctly point out that in Swoboda, the plaintiff could not remember the circumstances surrounding her fall, while in this case, Mary recalls all of the circumstances of the incident on March 30, 1999. "[I]t is merely the fact that she could not see what was coming up from behind her that prevents her from saying for sure what struck her." Brief for appellants at 6.
Mary saw a foam sheet fly past her immediately upon being struck, but she did not "know" what hit her or where the object came from that hit her. Only with rearview vision could Mary truly "know" what struck her, but if complete personal knowledge or an eyewitness were the legal standard, circumstantial evidence would be of little or no value. Clearly, circumstantial evidence may be used to prove causation, provided it fairly and reasonably justifies the conclusion that the Appellees' negligence was the proximate cause of Mary's injury. Mary was not required to eliminate all alternate theories, such as a piece of material from another construction site hitting her.
The Appellees adduced evidence that they covered and weighted down their foam sheets. The Appellees also produced an affidavit from Stanek, in which Stanek stated he could not say that the "broken piece of foam board" recovered by Mary's son was a product Olson or PMC used on the subject project or that it came from an area of the construction site under Olson's or PMC's control. But, such evidence is not conclusive on this motion for summary judgment and may be met by opposing circumstantial evidencewhich it has been in this case.
Viewing the evidence in a light most favorable to Mary, there was circumstantial evidence leading to three inferences. First, there is an inference that Mary was struck by the foam sheet, because Mary saw a foam sheet fly by her immediately after she was struck, and the wind was blowing at her backwhich could cause a foam sheet to fly toward her back as she stood at the trunk of her car. Given the reasonable inference that Mary was struck by a foam sheet, the second permissible inference is that the foam sheet came from the Appellees' pile of foam sheets. The record shows that the Appellees had foam sheets at the construction site, and Mary testified that she saw three other foam sheets in the parking lot that were the same as the one that flew past herand the location of the stored foam sheets in relation to Mary's location, *815 given the direction of the wind, would be consistent with potential of such a sheet being blown toward her. The third inference is that the Appellees did not properly secure their roofing materials, given Mary's testimony in her deposition that she saw three other foam sheets in the parking area as she walked back to the Clinic that were the same as the one she saw fly by her when she was struck. This evidence allows the inference that the foam sheets at the Alegent construction site were not secured and weighted down; otherwise, four foam sheets would not have been blowing around the parking area.
The evidence, when viewed most favorably to Mary, allows the reasonable inference that she was struck by a foam sheet from the Appellees' supply thereof at their Alegent construction site, which supply had not been properly secured in the face of severe winds. Such conclusions would not be guesses or speculation, but, rather, acknowledgment that necessary factual propositions can be proved circumstantially. Therefore, summary judgment was improper on this record.
PMC alleges that the trial court erred in not dismissing PMC from the lawsuit on statute of limitations grounds. The suit was filed 4 days before the statute of limitations for a personal injury action such as this would have run. See Neb. Rev.Stat. § 25-207 (Reissue 1995). PMC concedes that it has waived any defense of lack of jurisdiction, insufficiency of process, and insufficiency of service of process. PMC's argument is that because it was not named as a proper defendant in the complaint filed on March 26, 2003, and was substituted as a party pursuant to a stipulation on August 4, PMC was not sued within the 4-year statute of limitations for tort actions.
Through the stipulation, the parties agreed upon the proper defendant, PMC. The originally named party was "Meyers-Carlisle-Leapley Construction Co., Inc[.,] f/k/a Powers-Meyers-Carlisle, a Nebraska Corporation." On May 21, 2003, Robert J. Carlisle was served with the summons. Such service was within the 6-month "grace period" for service of summons on a defendant who has been sued within the statute of limitations. See Neb.Rev.Stat. § 25-217 (Cum.Supp.2006). See, also, Smeal v. Olson, 263 Neb. 900, 644 N.W.2d 550 (2002).
On June 17, 2003, attorney Michael T. Gibbons wrote to Jeffrey A. Karp, who identified himself in his summary judgment affidavit as the executive vice president of Power Construction Company. Karp's affidavit also stated that he was the "Project Executive" for PMC on the Alegent construction project. Gibbons' letter to Karp was attached to Karp's affidavit and stated:
As you may or may not be aware, Meyers-Carlisle was recently sued by an individual who allegedly suffered injury while exiting [the Clinic] on March 30, 1999. As you can see from the face of the Complaint, [the Kotlarzes] have incorrectly listed Meyers-Carlisle as "Powers-Meyers-Carlisle, a Nebraska Corporation."
Ultimately, this lawsuit was turned over to Meyers-Carlisle's general liability insurer, Cincinnati Insurance Company. I was hired by Cincinnati Insurance Company to defend Meyers-Carlisle. Through discussing this case with Bob Carlisle, however, it has come to my attention there was a Joint Venture Agreement entered into between Power Construction and Meyers-Carlisle on July 24, 1998. . . .
. . . I expect [the Kotlarzes'] attorney will amend the Complaint to include the proper entity pursuant to the misnomer statute in Nebraska. Additionally, we *816 filed an Answer and served [the Kotlarzes'] attorney with written discovery in an effort to expedite our quest to learn more about [Mary's] alleged injuries.
Approximately a month after this letter, Gibbons entered into the aforementioned stipulation filed on August 4, 2003, providing that the captioned defendant, "Meyers-Carlisle-Leapley Construction Company, Inc., f/k/a Powers-Meyers-Carlisle, a Nebraska corporation" (hereinafter MCL), was a misnomer and that "`Powers-Meyers-Carlisle, a Project-Specific Joint Venture'" PMCshould be substituted in its place. The stipulation further provided that the "properly named and substituted defendants will be referred to collectively as `Powers-Meyers-Carlisle.'" The original answer filed by Gibbons for MCL did not assert a statute of limitations defense but alleged (consistent with the stipulation) that "the Alegent . . . project was performed by a joint venture known as Powers-Meyers-Carlisle, a project-specific joint venture. This project-specific joint venture was entered into and performed by Meyers-Carlisle Construction Company. . . qualified to do business in the State of Nebraska . . . and Power Construction Company, an Illinois corporation . . . ."
The joint venture, PMC, did not file an answer or a cross-claim until September 2004, when, with counsel other than Gibbons, PMC alleged that the claim was barred by the statute of limitations. The trial court's decision did not address this defense, which we see as an issue of law. Therefore, we address the issue in light of our finding that summary judgment was improper on the liability issue.
The statute of limitations defense implicates the relation-back statute, Neb. Rev.Stat. § 25-201.02 (Cum.Supp.2006), which has been mentioned by the Nebraska Supreme Court in Smeal v. Olson, 263 Neb. 900, 644 N.W.2d 550 (2002) (Smeal), to the extent that the court noted that such statute was enacted during the time that the petition for further review of this court's decision in Smeal v. Olson, 10 Neb. App. 702, 636 N.W.2d 636 (2001), was pending before the Supreme Court. See 2002 Neb. Laws, L.B. 876. Therefore, in Smeal, the Supreme Court did not discuss the effect of the new statute, and, although the court ultimately reversed our decision, it agreed with our holding that the time in which the substituted party could have notice of the suit included the 6-month grace period for service of process provided for in § 25-217. However, the enactment of § 25-201.02 eliminated the 6-month grace period from the time in which a substituted defendant could have acquired notice of the suit. Section § 25-201.02(2) provides:
If the amendment changes the party or the name of the party against whom a claim is asserted, the amendment relates back to the date of the original pleading if (a) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, and (b) within the period provided for commencing an action the party against whom the claim is asserted by the amended pleading (i) received notice of the action such that the party will not be prejudiced in maintaining a defense on the merits and (ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
(Emphasis supplied.)
Smeal dealt with a substituted party who was neither sued nor served with process within the statute of limitations or the 6-month grace period provided by § 25-217, but who was alleged by the *817 plaintiff to have had notice of the original petition before the cumulative time bar of the statute of limitations and the 6-month grace period for service under § 25-217. The Nebraska Supreme Court found that it was the substituted defendant's burden to come forward with evidence to pierce the plaintiff's allegation in the amended petition that such defendant "`had notice of Plaintiff's original Petition prior to the time bar.'" 263 Neb. at 909, 644 N.W.2d at 558. As a result of the substituted defendant's failure to carry such burden, the summary judgment granted by the trial court was reversed.
Turning to the present case, after the substitution of the joint venture, PMC, for MCL, there was no new petition or complaint filed, and, notably, no allegation by the Kotlarzes that PMC, the joint venture, had notice of the suit before March 30, 2003. On the motion for summary judgment, the previously referenced affidavit of Karp was introduced in evidence, and it states that PMC was aware of the incident involving Mary at the Alegent site shortly after it was reported by her, and that while PMC was aware of the potential of a claim shortly after the incident, PMC was unaware that suit had been filed until receipt of the June 17 letter from Gibbons, from which we have quoted above. Karp's affidavit stands uncontested by the Kotlarzes. As a result, PMC has carried its burden imposed by Smeal to show lack of notice of the suit, which noticebecause of the passage of § 25-201.02PMC must have had before the statute of limitations ran on March 30, remembering that the 6-month grace period for service under § 25-217 is no longer included in the calculation, as it was in Smeal. See, also, Reid v. Evans, 273 Neb. 714, 733 N.W.2d 186 (2007). Therefore, the statute of limitations bars the Kotlarzes' suit against PMC, the joint venture.

CONCLUSION
We, therefore, reverse the grant of summary judgment as to defendant Olson, because there are material issues of fact as to such defendant, and we remand the cause for further proceedings as to such defendant. We affirm the grant of summary judgment and the dismissal with prejudice as to PMC, but on the basis that the suit against such defendant is barred by the statute of limitations.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.