court will affirm the lower court's decision regarding those errors.[19] Because the appellant has the duty to present a record supporting the assigned errors, he or she necessarily bears the burden of presenting a record demonstrating that the appellate court has jurisdiction.

If the party appealing from a judgment after the denial of a motion for new trial is relying upon the savings clause of § 25-1144.01, the party must ensure that the "announcement" of decision appears in the record. If the trial court's record does not include it, the party seeking to appeal must make sure that it properly becomes part of the record. And the party must then make sure that it is included in the record presented to the appellate court.

## CONCLUSION

The savings clause of § 25-1144.01 is a useful tool to avoid losing the right to appeal. But it has no effect when a motion is filed before announcement or where the record does not show an announcement before entry of judgment. I remind the practicing bar that failing to ensure that such an announcement is included in the record might result in an irrevocable loss of an appeal, which in turn is likely to lead to unpleasant consequences.

---

[19] *Centurion Stone of Neb. v. Whelan*, 286 Neb. 150, 835 N.W.2d 62 (2013).

---

John Hughes, appellant, v. School District
of Aurora, Nebraska, a Nebraska
political subdivision, appellee.
___ N.W.2d ___

Filed February 6, 2015.    No. S-13-1144.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was

granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial.

4. ____: ____. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

5. **Proximate Cause: Words and Phrases.** A proximate cause is one that produces a result in a natural and continuous sequence and without which the result would not have occurred.

6. **Negligence: Proximate Cause: Proof.** To establish proximate cause, the plaintiff must meet three basic requirements: (1) Without the negligent action, the injury would not have occurred, commonly known as the "but for" rule; (2) the injury was a natural and probable result of the negligence; and (3) there was no efficient intervening cause.

7. **Trial: Negligence: Proximate Cause.** Causation is ordinarily a matter for the trier of fact.

8. **Summary Judgment.** Key factual propositions may be present for summary judgment purposes by reasonable inference.

9. ____. When reasonable minds can differ as to whether an inference can be drawn, summary judgment should not be granted.

10. ____. A choice between two equally likely possibilities does not create a material issue of fact.

11. **Trial: Negligence: Proof.** A plaintiff is not bound to exclude the possibility that the event might have happened in some other way.

Appeal from the District Court for Hamilton County: Michael J. Owens, Judge. Reversed and remanded for further proceedings.

Tina M. Marroquin, of Pollack & Ball, L.L.C., for appellant.

Andrea D. Snowden and Robert B. Seybert, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

John Hughes tripped and fell while exiting a building owned by the School District of Aurora, Nebraska (District). Hughes sued the District, alleging that the District failed to maintain sufficient lighting, failed to construct a handrail along an exit

ramp, allowed a section of concrete to "heave," and allowed a concrete bench to obstruct the path of egress. The court sustained the District's motion for summary judgment because Hughes did not "know" what caused him to fall. Because reasonable minds could draw contrary conclusions from the evidence, we reverse.

## BACKGROUND

### Factual Background

The District operates a middle school in Aurora. The north side of the building has an "entrance-exit" consisting of a pair of exterior doors, a "vestibule area," and a pair of interior doors. The exterior doors open to a landing that transitions into a concrete ramp running north and south. "Sloping sides (ramp like) flank the ramp on the east and west." The ramp terminates at a driveway, running east and west, that separates the middle and high schools. A concrete bench is anchored outside the doors. The bench sits to the west of the ramp and about 4 feet from the ramp's edge.

On October 15, 2009, Hughes went to the middle school in Aurora to watch his daughter compete in a varsity volleyball match. The varsity match started about 7 p.m., but Hughes arrived at 5 or 5:30 p.m. to watch the junior varsity match. Hughes' wife drove their vehicle to the game and parked it along the driveway between the middle and high schools, at a point west of the terminus of the ramp. Hughes testified that "[i]t was daylight still" when he arrived. Hughes entered the middle school through the north doors.

Hughes estimated that the varsity match ended "a little bit after nine o'clock." After the match ended, Hughes lingered to congratulate the players and talk to other spectators. Hughes testified that it was 9:15 or 9:30 p.m. when he exited the building.

Walking alone, Hughes exited the middle school through the north doors. His wife and father-in-law, who had accompanied him to the match, had already made it back to the vehicle. Hughes testified that "[i]t was dark, very dark" when he left the building, too dark for him to see the bench. Hughes testified that there were some lights inside the vestibule and

just outside the doors. An ambulance parked along the drive-way also emitted some light.

Hughes testified that after he passed through the north doors, his progress was stopped by a crowd of 8 to 15 people standing on the ramp and preventing him from continuing down the ramp to the driveway. The bench was southwest of where Hughes testified the crowd was located. Hughes explained that to avoid the crowd, he "turned around," "walked back," and "made the right-hand turn." That is, Hughes testified that he walked to the south and west. Hughes stated that as he did so, "I was looking ahead of me to make sure I wasn't going to run into anything . . . ."

Hughes testified that after he turned, "[a]ll of a sudden I went flying through the air, and I remember putting my hand down, because I could see the bench and put one hand down. I pushed myself off from the bench. That's when I came down and hit the concrete." Hughes' elbow bore the brunt of the impact, and he underwent surgery to repair a broken bone in his arm.

Asked what "caused [him] to fall," Hughes initially testified that "[t]here was a piece of concrete by the bench that's sticking up . . . that tripped me." But Hughes later testified that he was not sure what caused him to fall:

> I was walking along, and all of a sudden I was flying in the air. If I knew exactly how I fell or what caused the fall, whether it was the slope or the incline or the edge that was protruding, I'd tell you, but I don't really know. I was walking. Next thing I knew I was flying through the air.

Hughes testified that he did not believe that he tripped over the bench. The bench is about 18 inches tall, and Hughes did not have any "serious injuries" on his legs consistent with walking into the bench.

Hughes returned about a week after his fall to view the layout of the north exit and take photographs. Hughes testified that one of the concrete slabs near the bench had heaved, creating a raised "lip" 1½ to 1¾ inches high. The heaved section of concrete was to the immediate east of the north edge of the bench, so that a person approaching the bench in a

southwesterly direction would encounter the lip immediately before the bench.

Jim Harper, a licensed engineer, testified about the conditions at the north exit. Harper stated that he formed his opinions from site inspections, Hughes' account of the incident, photographs taken by Hughes, and a review of relevant building codes. Harper testified that he visited the site twice. On his first visit, Harper arrived "about dusk" and "just kind of watched the site . . . as it got dark." On his second visit, Hughes accompanied Harper and Hughes explained the various issues that he believed contributed to his fall.

Harper testified that school buildings in Nebraska must comply with the National Fire Protection Association's "Life Safety Code." Based on conversations with Hughes, the photographs taken by Hughes, and his independent observations, Harper testified that the lighting as it existed on October 15, 2009, violated the code. Harper also testified that the absence of handrails along the ramp violated the code. Based on the "rise of the ramp," the code required handrails that extended the entire length of the ramp. Harper testified that the "flare" or "side slope" on either side of the ramp was itself noncompliant in the absence of handrails. Harper opined that the presence of the bench itself did not violate the code but that, because the District did not establish a clear path of egress, the bench could become an obstruction. Generally, Harper testified that there was not a "defined means of egress" from the north exit: "You left the exit, and you were somewhat on your own."

As to causation, Harper opined the lighting condition "contributed to" Hughes' fall because Hughes "couldn't tell how to proceed out those doors." Harper also testified that code-compliant handrails "would have prevented" Hughes from leaving the ramp, "[s]hort of him climbing over [the handrail] or going under it or going all the way to the street and then coming up around it . . . ."

## Procedural Background

In his operative complaint, Hughes alleged that he "was caused to trip and fall on the public sidewalk of the [District]."

Hughes identified four conditions that contributed to his fall: (1) The District's failure to "install and maintain lighting at the exit of the gymnasium building"; (2) "the slope of the sidewalk . . . unprotected by a proper guardrail"; (3) an "adjoining sidewalk section [that] had heaved leaving dangerous vertical differences between adjoining sections of the sidewalk"; and (4) the obstruction created by the concrete bench.

The District moved for summary judgment, and the court sustained its motion. The court stated that the "one primary issue" was whether the allegedly negligent conditions on the District's property proximately caused Hughes' injuries. More specifically, the court framed the issue as whether our opinion in *Swoboda v. Mercer Mgmt. Co.*[1] was "controlling in the case at bar." The court concluded that "the holding of *Swoboda* is controlling," emphasizing that Hughes testified that he did not "know" what caused him to fall.

## ASSIGNMENT OF ERROR

Hughes assigns that the district court erred by sustaining the District's motion for summary judgment.

## STANDARD OF REVIEW

[1,2] We affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted, and give that party the benefit of all reasonable inferences deducible from the evidence.[3]

## ANALYSIS

Hughes argues that the record supports an inference that the District's negligence proximately caused his injuries. His

---

[1] *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997).

[2] *deNourie & Yost Homes v. Frost*, 289 Neb. 136, 854 N.W.2d 298 (2014).

[3] *Id.*

theory on appeal is that a fact finder could infer that he tripped over the concrete lip, which he could not see because of poor lighting. Hughes contends that he "has a complete recollection of the events," including the manner of his exit from the building and the mechanics of his fall.[4] The District argues that Hughes was "unable to recall how he went from walking to flying in the air" and has offered "four possibilities" of what caused his injury.[5] According to the District, "Nebraska law does not permit a fact finder to be presented with more than one possibility of the cause of a plaintiff's fall . . . ."[6]

[3,4] The primary purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled.[7] The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial.[8] If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[9] Summary judgment proceedings do not resolve factual issues. Instead, they determine whether there are factual issues to be decided.[10]

[5-7] Here, the court entered summary judgment for the District because Hughes failed to produce evidence that his injury was proximately caused by the District's negligence. A proximate cause is one that produces a result in a natural and continuous sequence and without which the result would not have occurred.[11] To establish proximate cause, the plaintiff must meet three basic requirements: (1) Without the negligent

---

[4] Brief for appellant at 9.

[5] Brief for appellee at 10, 13-14.

[6] *Id.* at 10.

[7] *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004).

[8] *Id.*

[9] *Id.*

[10] See *Brock v. Dunning*, 288 Neb. 909, 854 N.W.2d 275 (2014).

[11] *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014).

action, the injury would not have occurred, commonly known as the "but for" rule; (2) the injury was a natural and probable result of the negligence; and (3) there was no efficient intervening cause.[12] Causation is ordinarily a matter for the trier of fact.[13]

In reaching its conclusion, the district court reasoned that our decision in *Swoboda v. Mercer Mgmt. Co.*[14] was "controlling." In *Swoboda*, the plaintiff fell as she reached the top of a flight of stairs in a building owned and managed by the defendants. The landing at the top of the stairs was made of brick before giving way to an elevated wood floor. A brick ramp extended from the wood floor to the landing at an angle perpendicular to the stairway. The plaintiff, who was 95 years old, ascended the stairs using the left handrail while her granddaughter held onto her right arm. As the plaintiff approached the last step, her granddaughter left her side to open a door. When the granddaughter looked back, she saw the plaintiff sitting on the wood floor with her legs extended down the ramp. The plaintiff alleged that she tripped over the side of the ramp, and the affidavit of an engineer stated that the ramp violated the building code. The trial court sustained the defendants' motion for summary judgment.

We affirmed, stating that an issue of fact cannot be created by "guess, speculation, conjecture, or choice of possibilities."[15] The "practical difficulty" with the plaintiff's claim was that no one saw her fall and the plaintiff herself "d[id] not remember the circumstances surrounding the fall."[16] The evidence revealed two possible causes of the plaintiff's injury but did not yield an inference that one was more likely than the other:

> [A] jury presented with the question of why [the plaintiff] fell would be faced with at least two possibilities:

---

[12] *Id.*

[13] *Id.*

[14] *Swoboda v. Mercer Mgmt. Co., supra* note 1.

[15] *Id.* at 352, 557 N.W.2d at 632.

[16] *Id.* at 349, 351, 557 N.W.2d at 631, 632.

> (1) [The plaintiff] tripped over the top step or (2) [the plaintiff] tripped over the ramp. . . . [T]he evidence in this case leaves the jury with the prospect of guesswork as to which of these possibilities actually caused [the plaintiff's] injuries.[17]

Because the evidence did not "lead a reasonable mind to one conclusion rather than another,"[18] the defendants were entitled to summary judgment. The plaintiff could not remember if she was on the landing or ascending the stairs when she began to fall, and the position of her body when her granddaughter turned around did not support an inference that her fall began at one point rather than the other.

Below and on appeal, Hughes has analogized the facts to those in *Kotlarz v. Olson Bros., Inc*.[19] In *Kotlarz*, the plaintiff attended a physical therapy session at a clinic. The property was under construction, but no work was being done on the day of the plaintiff's injury because of strong winds. After her session ended, the plaintiff walked to her car and placed equipment inside the trunk. As she closed the trunk door, the plaintiff felt a gust of wind followed by a sharp blow to her neck. The plaintiff looked up and saw a foam sheet flying through the air in front of her. She also noticed several other foam sheets in the parking area. The plaintiff brought a negligence action against several construction firms. Relying on *Swoboda*, the trial court sustained the defendants' motions for summary judgment because "'a fact finder would have to guess at the possible cause of the accident.' . . ."[20]

The Nebraska Court of Appeals reversed, concluding that the evidence supported a reasonable inference that one of the defendants' foam sheets caused the plaintiff's injury. Admittedly, the plaintiff "did not know where the object came from, she did not see what hit her, and there were no

---

[17] *Id*. at 352-53, 557 N.W.2d at 633.

[18] *Id*. at 352, 557 N.W.2d at 632.

[19] *Kotlarz v. Olson Bros., Inc*., 16 Neb. App. 1, 740 N.W.2d 807 (2007).

[20] *Id*. at 5, 740 N.W.2d at 812.

eyewitnesses."[21] The trial court based its judgment "largely on the fact that no one saw an object hit [the plaintiff], and [the plaintiff] herself does not 'know' what hit her."[22] But the Court of Appeals stated that the plaintiff did not have to "'know'" what hit her, and could not have known without "rearview vision."[23] As the court noted, "if complete personal knowledge or an eyewitness were the legal standard, circumstantial evidence would be of little or no value."[24] The court concluded that the circumstantial evidence—particularly evidence of the location of the defendants' foam sheets, wind direction, and foam sheets in the parking area—provided a basis to infer that a foam sheet from the defendants' pile struck the plaintiff. Whereas the plaintiff in *Swoboda* could not remember whether she was on the landing or still traversing the steps when she fell, the plaintiff in *Kotlarz* was able to "recall[] all of the circumstances of the incident."[25]

Recently, the Eighth Circuit distinguished *Swoboda*, emphasizing that *Swoboda* involved evidence of two equally likely causes of the plaintiff's injury. In *Pohl v. County of Furnas*,[26] the plaintiff was driving to a farm on a snowy evening, when he turned onto a gravel road. After some distance, the road made a 90-degree turn, and the county had posted a warning sign about 110 feet from the curve. The plaintiff's vehicle left the road at the curve and collided with an embankment. The plaintiff brought a negligence action against the county, alleging that the county's placement of and failure to maintain the sign proximately caused his injuries. Because of trauma from the crash, the plaintiff "had no memory of that night from shortly after turning onto [the road] until he regained consciousness after the accident."[27] As a result, "he did not

---

[21] *Id.* at 3, 740 N.W.2d at 810.

[22] *Id.* at 8, 740 N.W.2d at 813.

[23] *Id.* at 9, 740 N.W.2d at 814.

[24] *Id.*

[25] *Id.*

[26] *Pohl v. County of Furnas*, 682 F.3d 745 (8th Cir. 2012).

[27] *Id.* at 749.

remember seeing the sign or braking prior to leaving the roadway."[28] A traffic engineer testified that the placement and lack of "retroreflectivity" of the sign violated the U.S. Department of Transportation's Manual on Uniform Traffic Control Devices.[29] Based on data from the vehicle's "black box," an accident reconstructionist testified that the plaintiff was speeding as he approached the curve and started to brake when the vehicle was "closely aligned with the sign."[30] The court allocated 60 percent of the negligence to the county after a bench trial and awarded the plaintiff damages.

Citing *Swoboda*, the county argued on appeal that the trial court erred in determining that its negligence proximately caused the crash:

> The county contends that there were several equally likely causes of the accident, including that [the plaintiff] was not maintaining a proper lookout and thus failed to see the sign, that he saw it and failed to heed it, or that the falling snow prevented him from seeing it. It urges that because [the plaintiff] cannot remember whether or not he saw the sign before leaving the road, the district court's proximate cause determination was based on speculation rather than evidence.[31]

The Eighth Circuit concluded that the facts supported an inference that the illegibility and placement of the sign caused the plaintiff's injury. Although the plaintiff "could not remember whether or not he saw the sign prior to the accident," there was circumstantial evidence that he braked near the sign.[32] This evidence supported a reasonable inference that the plaintiff braked because he saw the sign and, therefore, might have braked sooner if the sign was farther up the road or visible from a greater distance. Furthermore, the record did not support the county's alternative theories of causation. For example, there

---

[28] *Id*.

[29] *Id*. at 750.

[30] *Id*.

[31] *Id*. at 752-53.

[32] *Id*. at 753.

was no evidence that the plaintiff was not paying attention to the road or that the snow impeded visibility.

[8,9] We conclude that whether the allegedly negligent conditions outside the middle school proximately caused Hughes' injuries is a disputed material issue of fact. Hughes produced evidence that, below the ramp unguarded by a handrail, there was an elevated concrete lip adjacent to a concrete bench and that he could not see these conditions because of weak lighting. Importantly, Hughes testified about the path he took and where he was when he fell. Viewed in a light most favorable to Hughes, his testimony supports an inference that his path of egress intersected the concrete lip. If a person approaching from the angle Hughes described tripped on the lip, he would have fallen onto the concrete bench. Key factual propositions may be present for summary judgment purposes by reasonable inference.[33] And when reasonable minds can differ as to whether an inference can be drawn, summary judgment should not be granted.[34] Here, the evidence permits a reasonable inference that Hughes tripped on a concrete lip that he could not see because of a lack of lighting.

[10] In contrast, the plaintiff in *Swoboda* was not only unable to produce direct evidence of the cause of her injury, she was unable to testify about the circumstances. She could not recall, for example, whether she was on the stairs or on the landing when she began to fall. Nor could an inference be drawn based on where her granddaughter found her sitting. A choice between two equally likely possibilities does not create a material issue of fact.[35] But like the plaintiff in *Kotlarz*, Hughes was able to recall the circumstances of his fall, and these circumstances support a reasonable inference as to the cause.

[11] Furthermore, as the Eighth Circuit noted, *Swoboda* involved evidence of two equally likely causes of the plaintiff's

---

[33] *Kotlarz v. Olson Bros., Inc., supra* note 19.

[34] *McKinney v. Okoye*, 287 Neb. 261, 842 N.W.2d 581 (2014); *Schade v. County of Cheyenne*, 254 Neb. 228, 575 N.W.2d 622 (1998).

[35] See *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012).

fall. Here, the District, the movant, did not produce evidence of an alternative cause. It is always possible, of course, that Hughes' feet simply became tangled, even if there is direct evidence to the contrary. But a plaintiff is not bound to exclude the possibility that the event might have happened in some other way.[36] Contrary to the District's argument, Hughes' case is not doomed because there is more than one possible cause. It is enough for summary judgment purposes that the evidence permits a reasonable inference that negligent conditions on the District's property caused Hughes' injury.

## CONCLUSION

Because reasonable minds could draw contrary conclusions from the evidence presented, the District did not show that it was entitled to judgment as a matter of law. We therefore reverse the court's summary judgment order and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WRIGHT, J., participating on briefs.

---

[36] *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996).

---

STATE OF NEBRASKA, APPELLEE, V.
WA'IL M. MUHANNAD, APPELLANT.
___ N.W.2d ___

Filed February 6, 2015.    No. S-14-129.

1. **Pleadings.** Issues regarding the grant or denial of a plea in bar are questions of law.
2. **Judgments: Appeal and Error.** On a question of law, an appellate court reaches a conclusion independent of the court below.
3. **Motions for Mistrial: Pleadings: Prosecuting Attorneys: Intent: Appeal and Error.** While the denial of a plea in bar generally involves a question of law, an appellate court reviews under a clearly erroneous standard a finding concerning the presence or absence of prosecutorial intent to provoke the defendant into moving for a mistrial.