Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/10/2020 09:07 AM CST

Jay Williamson, Personal Representative of the
Estate of Peggy Williamson, deceased, appellant,
v. Bellevue Medical Center, LLC, appellee.

___ N.W.2d ___

Filed October 18, 2019.    No. S-18-1069.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
3. **Summary Judgment.** The primary purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled.
4. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial.
5. ____: ____. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.
6. **Summary Judgment.** At the summary judgment stage, the trial court determines whether the parties are disputing a material issue of fact. It does not resolve the factual issues.
7. **Negligence: Liability: Proximate Cause.** A possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if (1) the possessor either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the

condition; (2) the possessor should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the possessor should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the possessor failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff.

Appeal from the District Court for Sarpy County: Nathan B. Cox, Judge. Affirmed.

Michelle D. Epstein, of Ausman Law Firm, P.C., L.L.O., for appellant.

Kathryn J. Cheatle, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
### NATURE OF CASE
Peggy Williamson sustained injuries when she fell on a curb between a driveway and a sidewalk outside the entrance to Bellevue Medical Center, LLC (BMC), in Bellevue, Nebraska. She brought an action for negligence and premises liability in the district court for Sarpy County. Following her death, the action was revived in the name of her husband, Jay Williamson, as personal representative of Peggy's estate (Williamson). The district court granted summary judgment in favor of BMC, noting that BMC presented evidence that there was no defect in the curb, that it did not violate any code or ordinance, and that Williamson failed to produce evidence that the curb created an unreasonable danger. Williamson appeals, arguing it was error to grant summary judgment because a material issue of fact remained as to whether BMC should have expected that lawful entrants such as Peggy would not discover or realize the danger of an unpainted sidewalk curb or would fail to protect themselves against such danger. We affirm.

## STATEMENT OF FACTS

Peggy fell on a curb at BMC's premises on August 5, 2012. Peggy brought a personal injury action alleging BMC was negligent with regard to the unpainted curb between the driveway and sidewalk approaching the BMC main entrance. The complaint alleged, summarized and restated, that BMC was negligent because it (1) created a hazardous condition on its premises; (2) knew or should have known the unpainted curb posed an unreasonable risk of harm to others, such as Peggy; and (3) failed to reasonably warn or protect visitors against the danger. Peggy alleged that she suffered significant injuries and damages as a result of her fall, including a nasal bone fracture, a closed head injury, and a right knee meniscus tear.

BMC's answer generally denied that it was negligent and asserted various affirmative defenses not relevant to this appeal. BMC later moved for summary judgment. While the proceedings in the trial court were pending, Peggy died on February 3, 2018. Williamson was appointed personal representative of Peggy's estate, and the action was revived in his name as personal representative of Peggy's estate.

At a hearing on the motion for summary judgment, the district court admitted evidence submitted by both parties, including surveillance footage of the fall; photographs; depositions of Peggy and Williamson; and affidavits and depositions regarding the construction of the curb, BMC's ongoing initiatives to increase safety throughout the BMC campus, and remedial measures taken after Peggy's fall to mark the elevation change of the curb.

The evidence generally showed that on Sunday, August 5, 2012, at approximately 2 p.m., Peggy and Williamson drove to BMC to visit a friend. They attempted to enter the BMC main entrance and found the doors locked because it was the weekend. A sign rerouted visitors to entrance doors at the emergency department. They began to walk toward the emergency department when a person stepped out from the main entrance doors and offered to let them in. At this point, Peggy turned,

approached the main entrance again, and fell on an unpainted curb area between the driveway to BMC and the sidewalk approaching the main entrance. The curb featured a tapered or flared edge where the elevation gradually changed from a flat curb to a raised curb. The curb was the same color as the surrounding concrete on the sidewalk and driveway.

At her deposition, Peggy described the events leading up to and following her fall. She watched the surveillance video that showed her walking along the sidewalk; stepping down the curb into the driveway; turning around to proceed back along the same general area toward the main entrance, ahead of Williamson; and tripping on the curb. Peggy denied having observed any taper or elevation change in the sidewalk prior to her fall and believed that the area was flat without a curb. Peggy testified that the sole cause of her tripping was the change in elevation between the driveway and the curb. She stated in her affidavit that she believed that if the curb cutout had been painted bright yellow at the time she fell, as was done sometime after the incident, she would have "stepped differently" and not tripped over the change in elevation.

Williamson testified in his disposition that he did not observe Peggy actually trip and fall and that he did not know exactly where she tripped. He helped Peggy up and into BMC, where she was treated in the emergency department.

In her deposition, Paulette Davidson, BMC's chief executive officer, acknowledged that she visited Peggy when she was in the emergency department and apologized for the main entrance doors being locked, for staff of the emergency department not coming out to help her, and for the fall itself. Peggy averred in her affidavit that Davidson stated that the curb should have been painted or marked. However, Davidson testified that she did not remember making this statement and believed she could not have known whether the curb was painted at the time she spoke with Peggy because she was unfamiliar with the curb when they spoke and did not know exactly where Peggy had fallen.

Brian Hovey, BMC's acting facilities manager, and Brandon Quindt, BMC's director of support services at the time of the fall, were also deposed. Both denied knowing of any complaints, safety concerns, or discussions about issues navigating the curbs along the driveway between the emergency room doors and the main entrance doors prior to Peggy's fall. They testified that because of their job duties, any incidents of tripping or any concerns related to tripping over the curb in question would have been brought to their attentions. They also testified they did not recall that the curb was obstructed from view, difficult to view, damaged, in a state of disrepair, or anything other than a standard curb.

A letter (McGill Letter) dated August 2, 2012, to Hovey, prior to Peggy's fall, from Timothy McGill, the president of McGill Restoration, discussed a bid to enhance markers on the curb in question. Specifically, the McGill Letter stated that McGill Restoration could "[m]ark the entire curb between the two entrances and in the circle lane near the southeast entrance yellow to identify the curb and hopefully eliminate trip and fall incidents." McGill Restoration is a business which specializes in concrete restoration and specialty coating systems with a primary focus on the repair, strengthening, and protection of parking structures, stadiums, bridges, and other infrastructures. Hovey testified that he did not recall why the bid was requested from McGill Restoration, but, as noted above, he stated he did not recall any incidents in the area, issues with the curb, or complaints about the curb's visibility prior to Peggy's incident.

McGill acknowledged that he was asked to "submit a bid to paint the slope between the street, curb, and handicap accessible ramp . . . to make the change in slope more noticeable for drivers and pedestrians." McGill did not recall whether the bid was requested as a result of an incident. McGill stated that he inspected the area at issue before making his bid. The McGill Restoration bid recommended several markings in the area, including re-marking existing crosswalks, marking curbs

between the entrances, crosshatching the sidewalk, installing signs for employees instructing them to avoid walking in the driveway, and touching up faded pavement parking throughout the facility.

Quindt testified in his deposition that the McGill Letter was consistent with work by a committee at BMC which was painting curbs throughout the BMC campus to "call out" elevation points or, in other words, to provide additional notification to visitors of elevation changes throughout the campus. Quindt testified that the committee's discussion or identification of steps to make an aspect of BMC safer did not indicate it was a hazard as it existed, but, rather, that it was part of continuing efforts to try and improve the overall safety of the BMC campus. He testified that the committee was not connected to specific prior incidents or complaints.

With regard to the curb construction, the court received the affidavits of Bruce Carpenter and McGill submitted by BMC. Carpenter is a senior vice president at an architectural firm, a licensed member of Nebraska's Board of Engineers and Architects, and a member of relevant professional organizations. Both Carpenter and McGill stated that the curb at issue complied with all applicable building codes and regulations. Carpenter denied the existence of "a building code or requirement that the curb at issue be painted or otherwise marked." He stated that the design contract and planning documents were in compliance with the applicable building codes when the city of Bellevue issued a building permit to BMC in 2008. He further stated that all habitable portions of BMC were inspected by Bellevue's city inspector, who issued temporary and permanent occupancy certificates stating the structure was in compliance with the ordinances of the city of Bellevue regulating building construction and use.

The district court evaluated the evidence presented by both parties and granted the motion for summary judgment filed by BMC. In its written order granting BMC's motion, the district court noted that there was no unreasonable defect in the curb, it

did not violate any code or ordinance, and no expert had identified the construction of the curb as a danger.

Williamson appeals.

## ASSIGNMENTS OF ERROR

Williamson claims that the district court erred when it granted summary judgment in favor of BMC. Specifically, he contends there was evidence which could support an inference that the unpainted, tapered curb at the BMC main entrance posed an unreasonable risk of harm to lawful entrants such as Peggy who would predictably fail to protect themselves against the danger.

## STANDARDS OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Hughes v. School Dist. of Aurora*, 290 Neb. 47, 858 N.W.2d 590 (2015). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

Williamson claims that the district court erred when it granted summary judgment in favor of BMC and dismissed his claims for negligence and premises liability related to Peggy's fall over an unpainted, tapered curb located between the driveway and the BMC main entrance. He argues that the evidence and inferences, viewed in his favor, created genuine disputes of material facts as to whether the unpainted curb between the driveway and the BMC main entrance created a dangerous condition and whether BMC should have expected that Peggy would not discover or realize the danger or would fail to

protect herself against the danger. As we discuss below, BMC carried its burden to show it was entitled to summary judgment, and even if the curb were deemed a dangerous condition, Williamson failed to produce evidence showing a genuine issue of material fact as to whether BMC should have expected persons such as Peggy would not discover or realize the danger from the unpainted curb and protect themselves against the danger. Accordingly, we affirm.

[3-6] We have noted that the primary purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled. *Hughes v. School Dist. of Aurora, supra*. Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2018) provides in part that a motion for summary judgment shall be granted "if the pleadings and the evidence admitted at the hearing show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Hughes v. School Dist. of Aurora, supra*. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* At the summary judgment stage, the trial court determines whether the parties are disputing a material issue of fact. It does not resolve the factual issues. *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). Where reasonable minds could draw different conclusions from the facts presented, there is a triable issue of material fact. See *id.*

[7] We have recognized that a possessor of land is subject to liability for injury caused to a lawful visitor by a condition on the land if (1) the possessor either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the possessor should have

realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the possessor should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the possessor failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the plaintiff. See *Herrera v. Fleming Cos.*, 265 Neb. 118, 655 N.W.2d 378 (2003). See, also, *Warner v. Simmons*, 288 Neb. 472, 849 N.W.2d 475 (2014); NJI2d Civ. 8.26.

Had the matter proceeded to trial, Williamson, as plaintiff, would have had the burden of proving each of the five elements identified above. But because the case was disposed of by a ruling on BMC's motion, it was incumbent on BMC to make a showing that even giving the inferences in favor of Williamson, Williamson's case would not be successful and it was entitled to judgment. See *Hughes v. School Dist. of Aurora*, 290 Neb. 47, 858 N.W.2d 590 (2015).

In the district court and on appeal, BMC contends that no reasonable finder of fact could infer from the evidence that Williamson could prove all five elements of a premises liability claim. Thus, BMC argued particularly that Williamson could not show that the unpainted curb posed an unreasonable risk of harm, because although it was unpainted and tapered, it was located between a driveway and a sidewalk where one ordinarily expects to find a curb. BMC asserts that a curb is not a condition which subjects it to liability as summarized in NJI2d Civ. 8.26. That is, the curb is merely an ordinary risk. See *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 254 Neb. 754, 579 N.W.2d 526 (1998). To put our analysis in context, we note that we have held that curbs are not inherently dangerous. See *id.* In the alternative, BMC also submitted evidence with regard to the third element identified above, because even if the unpainted curb did present an unreasonable risk of harm, its evidence showed that BMC should not have expected that a lawful visitor such as the plaintiff would

fail to discover and protect himself or herself against that risk. See *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004).

The evidence BMC adduced showed that the curb was not obstructed from view, was in good repair, and met applicable building codes. Although BMC had previously elicited bids from McGill Restoration that included a bid to paint and mark curbs, including the curb where Peggy tripped, the uncontroverted evidence showed that the McGill Letter was not a response to an incident or specific safety concern, but instead was part of an initiative to improve safety across the BMC campus. According to the evidence, BMC had received no prior complaints and BMC employees denied there was any reason to have safety concerns with the curb where Peggy tripped or similar curbs at BMC. Although not the determinative factor, BMC also directs our attention to the uncontroverted evidence that Peggy had successfully walked down the curb in the same area 12 seconds before her fall.

BMC relies on our precedent stating that even where a dangerous condition exists, a premises owner will not be liable unless the premises owner should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger. E.g., *Edwards v. Hy-Vee*, 294 Neb. 237, 883 N.W.2d 40 (2016); *Aguallo v. City of Scottsbluff, supra*; *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996). This principle follows the language of the Restatement (Second) of Torts § 343 (1965) and is consistent with 2 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 51 (2012).

We agree with the district court that BMC carried its initial burden showing it was entitled to judgment as a matter of law. Even assuming that a curb could pose a risk of danger, there was no evidence that BMC was on notice that a visitor such as Peggy either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger.

To the contrary, the curb was, by all accounts, ordinary and obvious, despite its tapered edge, and traversing it is the type of action a pedestrian walking between a parking lot and sidewalk would expect to encounter and navigate successfully. There was no evidence that the tapered edge made it less visible than a more commonplace step-style curb and no evidence of prior falls. Given BMC's showing, the burden shifted to Williamson to produce evidence that the curb posed an unreasonable risk of harm and that BMC should have been aware that persons similar to Peggy would fail to protect themselves against the danger or peril associated with the unpainted curb in this location. Williamson failed to do so.

In its order, the district court stated:

> There is no indication from the evidence received that there was any defect in the curb. There is no evidence that the unpainted curb was in violation of any code or ordinance. There is, likewise, no evidence of an expert identifying this unpainted curb as a danger. Moreover, [Peggy] walked over the exact same spot seconds earlier without issue, turned around and when walking back over the same spot, she then fell. These facts are undisputed and Williamson has failed to offer evidence to contradict the same.

Although our reasoning differs somewhat from that of the district court, we conclude that the district court did not err when it granted summary judgment in favor of BMC.

## CONCLUSION

There was no evidence from which a reasonable finder of fact could infer that Williamson had established all the elements of his premises liability case, and accordingly, we affirm the order of the district court which granted summary judgment in favor of BMC.

AFFIRMED.