FATHER FLANAGAN'S BOYS' HOME, APPELLEE, v. MILLARD SCHOOL DISTRICT, SCHOOL DISTRICT No. 17 OF DOUGLAS COUNTY, NEBRASKA, ET AL., APPELLANTS.
242 N. W. 2d 637

Filed June 2, 1976. No. 40590.

Malcolm D. Young and Joan Sacks-Wilner, for appellants.

Kutak, Rock, Cohen, Campbell, Garfinkle & Woodward, for appellee.

Paul L. Douglas, Attorney General, Warren D. Lichty, Jr., and Randall E. Sims, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

This is an action by Father Flanagan's Boys' Home to enjoin the defendant school district from condemning a 40-acre tract of land owned by the plaintiff. The trial court permanently enjoined the defendant from prosecuting condemnation proceedings against the land. The defendant appeals.

The defendant is a public school district, School District No. 17 of Douglas County, Nebraska, and is known as the Millard School District. It covers approximately 35 square miles of territory in Douglas and Sarpy Counties. The northern area of the district is bounded generally by Blondo Street, 132nd Street, West Center Road, and 168th Street. It had 8,133 students enrolled

in its schools in 1975 and its estimated enrollment in 1979 will exceed 13,000.

In 1975 the defendant's board of education determined that it was necessary to construct a new senior high school in the northern area of the district. The board selected the site owned by the plaintiff which is on the northwest corner of 144th and Pacific Streets and is near the geographical center of the northern area of the school district. The defendant was unable to purchase the tract from the plaintiff, so on October 6, 1975, the board adopted a resolution to condemn the property. A petition for the appointment of appraisers was filed on October 21, 1975. This action was filed on November 13, 1975. The other defendants are the members of the defendant's Board of Education and the appraisers appointed by the county judge.

The plaintiff alleged that the land which the defendant district wants to condemn is an integral and necessary part of the agricultural training program which the plaintiff conducts in the schools which it operates; that if the defendant were allowed to condemn the plaintiff's property it would establish a priority of public education over private in contravention of the constitutional rights of the minor students enrolled in its schools; that condemnation of the property is not authorized by law because the property is already being used for the public benefit through the education of minor children; and the condemnation was not authorized because the defendant has no present or reasonably foreseeable future need for the property for use as a public school.

The trial court found there was a present need for a high school in the northern area of the district and the defendant had shown a substantial interest or need for the property in question. The trial court further found that the defendant had failed to show there was not a "reasonable alternate means of accomplishment." This

latter finding gives rise to the principal issue on this appeal.

The plaintiff is a private, nondenominational, charitable, educational institution which serves as a home and school for orphaned, indigent, and otherwise under-privileged boys. The services it performs in this area are known over the entire world. The plaintiff has a present enrollment of approximately 350 boys.

Father Flanagan's Boys' Home chose a rural location for the home in order to give the boys a rural environment as a part of the educational process. In addition to the formal vocational agricultural program, many of the boys do farm work voluntarily or for disciplinary reasons.

The plaintiff owns and operates 950 to 1,000 acres of agricultural property and employs 7 persons full time for this purpose. In addition to farming the land the plaintiff has a dairy and feeding operation. The milk from the dairy operation and surplus crops are sold on the commercial market.

There are no buildings located on the 40-acre tract which the defendant seeks to condemn although the dairy and the farm headquarter buildings are located on the northern portion of the same section of land. The 40-acre tract has been used for row crops since the plaintiff has owned it.

The power of eminent domain is an attribute of sovereignty which exists independently of constitutional provision. Constitutional provisions relating to the power of eminent domain are limitations on the exercise of the power as distinguished from a grant. May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448.

The constitutional limitations upon the exercise of the power of eminent domain are that the use must be public, just compensation must be paid, and due process of law observed. Within these limits, the state, acting through the department or agency authorized to exercise the power, may proceed at will.

The legislative authority for the defendant's right to exercise the power of eminent domain is found in section 79-4,107, R. R. S. 1943. The only legislative restriction on the exercise of this power is that a school site must not exceed 50 acres and public parks and county or district fairgrounds may not be condemned. § 79-4,114, R. S. Supp., 1974.

The power of eminent domain includes the discretion to determine the necessity of exercising the power and the location of the site to be taken. Hammer v. Department of Roads, 175 Neb. 178, 120 N. W. 2d 909; May v. City of Kearney, *supra*. Generally the discretion involved in the exercise of the power is not subject to judicial review unless the taking is fraudulent, in bad faith, or an abuse of discretion; the taking is for a private purpose; or an excessive amount of property is sought to be condemned. May v. City of Kearney, *supra*. As a general rule property used for religious purposes or for private school purposes is subject to condemnation for public use. 26 Am. Jur. 2d, Eminent Domain, § 78, p. 736; 29A C. J. S., Eminent Domain, § 65, p. 311.

The decision of the trial court appears to have been based primarily upon two Colorado cases cited by the plaintiff, Pillar of Fire v. Denver Urban Renewal Authority, 181 Colo. 411, 509 P. 2d 1250, and Order of Friars, Etc. v. Denver Urban Renewal Authority, 186 Colo. 367, 527 P. 2d 804.

In the Pillar of Fire case the Urban Renewal Authority sought to condemn a church which had been the founding place for the Pillar of Fire religion. In the Order of Friars case the Urban Renewal Authority sought to condemn the parking lot of a church that had been designated an historical landmark. In these cases the Colorado court emphasized the unique nature of the property sought to be condemned and held that the Urban Renewal Authority could not proceed with condemnation proceedings in the absence of a showing that

there was a substantial public interest that could not be accomplished "through any other reasonable means."

It is unnecessary in this case to decide whether the rule adopted by the Colorado court in the Pillar of Fire case is valid in this state because such a rule is not applicable to the facts in this case. There is nothing unique about the 40-acre tract of farmland owned by the plaintiff which is involved in this case. The loss of this property will not interfere substantially in any way with the operation of the plaintiff's school program. The plaintiff will have more than 900 acres of agricultural land remaining after the taking and there is nothing in the record to suggest that this remaining land will not be adequate for school purposes.

The judgment of the District Court is reversed and the cause remanded with directions to vacate the injunction and dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS.