CHARLES DENNIS ZYBURO, APPELLANT, V. BOARD OF EDUCATION
OF LANCASTER COUNTY SCHOOL DISTRICT 160 AND LANCASTER
COUNTY SCHOOL DISTRICT 160, APPELLEES.

474 N.W.2d 671

Filed September 27, 1991.    No. 89-209.

Robert Wm. Chapin, Jr., for appellant.

Edwin C. Perry, of Perry, Guthery, Haase & Gessford, P.C., for appellees.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Caporale, J.

Following a hearing before the appellee Board of Education of Lancaster County School District 160, the plaintiff-appellant, Charles Dennis Zyburo, was discharged from his permanent employment as a certificated guidance counselor. He began this quest for judicial review by filing, through an attorney who was a former member of the Legislature, a petition in error, claiming that his employment with the board had been terminated unlawfully and naming the board as defendant. Finding that the board was not the proper party defendant, the court below sustained the board's special appearance.

Zyburo next, through his present attorney, and pursuant to leave, filed an amended petition. This time he alleged that he had been employed by the appellee Lancaster County School District 160 and named the district as defendant. The court below found that the amended petition had not been seasonably filed, sustained the district's special appearance to that pleading, and dismissed the entire action. This appeal was then perfected.

Thereafter, the Legislature purportedly adopted 1991 Neb. Laws, L.B. 511, which, in relevant part, undertakes to designate "the school district, school board, or both" as proper party defendants in error proceedings challenging the discharge of permanently employed certificated school employees. This was done on the 88th day of the 90-day session by substituting for the original contents of L.B. 511, dealing with rivers and related topics, material concerning a variety of educational matters, including the language which is the subject of this dispute. (This latter language was first placed before the Legislature on the 39th legislative day as an amendment to an earlier bill dealing with the discharge of certificated school

employees.) On the last legislative day, 2 days after its metamorphosis, L.B. 511 was professedly voted into law with the emergency clause.

The appellees first assert that the court below acquired no jurisdiction over them because Zyburo failed to perfect service on either of them. They also claim that the Legislature's transmogrification of L.B. 511 violated Neb. Const. art. III, § 14, which provides, inter alia, that no "vote upon the final passage of any bill shall be taken . . . until five legislative days after its introduction . . . ." Zyburo defends both the service he obtained and the Legislature's intervention. He also urges that, in any event, the court below erred because even under the law as it existed before the Legislature's machinations, the board was the proper party defendant and, if not, the amended petition against the district related back to the filing of the original petition and was thus seasonably filed.

Because resolution of the appellees' contention concerning the method of service depends upon the pre-L.B. 511 relationship between the board and district, we begin by analyzing that situation.

A school district was and continues to be defined as "the territory under the jurisdiction of a single school board." Neb. Rev. Stat. § 79-101(1) (Reissue 1987 & Cum. Supp. 1990). It was and remains a body corporate, "possess[ing] all the usual powers of a corporation for public purposes, may sue and be sued, and may purchase, hold, and sell such personal and real estate as the law allows." Neb. Rev. Stat. § 79-401 (Reissue 1987 & Cum. Supp. 1990).

A school board or board of education was and is "the governing body of any school district." § 79-101(11). A school board, as such, was and continues to be obligated to provide the necessary appendages for the schoolhouse, keep the same in good condition and repair during the time school is to be taught, and keep an accurate account of all expenses incurred; it also had and has the care and custody of the schoolhouse and other property of the school district, and the authority to hire a superintendent, the required number of teachers, and other necessary personnel. Neb. Rev. Stat. §§ 79-440 and 79-441 (Reissue 1987).

While a school district had in the past and continues to have the ability to sue and be sued, it was and is the school board which exercises this power as the school district's governing body. Neb. Rev. Stat. § 79-455 (Reissue 1987) then provided, as it does now: "It shall also be the duty of the president [of the school board] to appear for and on behalf of the district in all suits brought by or against the same." Hence, it was and is the duty of a school board president to see that the interests of the school district are protected.

In addition to the school board's past and present duty to maintain the schools and hire staff, chapter 79 of the statutes was and continues to be replete with sections which relate to school districts but specifically reference school boards as the governing body to carry out a school district's function. For example, Neb. Rev. Stat. § 79-402.03 (Reissue 1987 & Cum. Supp. 1990) provided and continues to provide that changes in boundaries or the creation of new districts from other districts may be initiated or accepted by school boards. In addition, transfers of territory could in the past and may now be transacted by the school board. See Neb. Rev. Stat. § 79-403.03 (Reissue 1987). Improvements within the school district required and continue to require action by the school board. See Neb. Rev. Stat. § 79-422 (Reissue 1987). The power of eminent domain given to the school district under Neb. Rev. Stat. § 79-4,107 (Reissue 1987) was and is exercised by the school board. See *Father Flanagan's Boys' Home v. Millard School Dist.*, 196 Neb. 299, 242 N.W.2d 637 (1976).

In respect to employment contracts for a school district, Neb. Rev. Stat. § 79-1249 (Reissue 1987) provided and continues to provide that a "majority of the members of a school board or board of education of any district *may enter into a contract of employment* with a legally qualified teacher or administrator." (Emphasis supplied.) Neb. Rev. Stat. § 79-1250 (Reissue 1987) articulated and still articulates that a "contract for employment of a teacher or administrator shall contain (1) a provision whereby the employed person affirms that . . . he is *not under contract with another school board* or board of education of a school district in this state . . . ." (Emphasis supplied.) Neb. Rev. Stat. § 79-1251 (Reissue 1987)

prohibited and continues to prohibit a school board from entering into a contract of employment with a person who is under contract with another board. Moreover, the relevant statutes granted and continue to grant the school board the power to amend, modify, cancel, or terminate employment contracts. See Neb. Rev. Stat. §§ 79-12,107 through 79-12,121 (Reissue 1987). Additionally, § 79-12,107(3) stated and continues to state, in relevant part, that "[p]robationary certificated employee shall mean a teacher or administrator who has served under a contract with the *school district* for less than three successive school years . . . ." (Emphasis supplied.) It is under the authority of these employment contract statutes that the board in this case conducted the hearing which resulted in the termination of Zyburo's contract.

The statutory scheme thus leads to the conclusion that contracts for the employment of certificated school employees of the type involved in this case are entered into with the school district by and through its school board. See, *Matrisciano v. Board of Ed. of Sch. Dist. No. 6*, 236 Neb. 133, 459 N.W.2d 230 (1990); *Brown v. Board of Education*, 231 Neb. 108, 435 N.W.2d 184 (1989); *Jeter v. Board of Education*, 231 Neb. 80, 435 N.W.2d 170 (1989); *Kennedy v. Board of Ed. of Sch. Dist. of Ogallala*, 230 Neb. 68, 430 N.W.2d 49 (1988); *Trolson v. Board of Ed. of Sch. Dist. of Blair*, 229 Neb. 37, 424 N.W.2d 881 (1988); *Niedbalski v. Board of Ed. of Sch. Dist. No. 24*, 227 Neb. 516, 418 N.W.2d 565 (1988); *Nuzum v. Board of Ed. of Sch. Dist. of Arnold*, 227 Neb. 387, 417 N.W.2d 779 (1988).

Thus, there is no question that the district is the real party in interest to a dispute concerning the discharge of a permanently employed certificated school employee. Indeed, in apparent recognition of this circumstance, the contract in question recites that the board "agree[s] to employ" Zyburo "in the schools of the district" and that the agreement is "made by and between" the district and Zyburo. The question, rather, is how, in an error proceeding challenging the discharge of a permanently employed certificated school employee, the district is to be designated. At least for this purpose, the relevant statutes, even before the enactment of L.B. 511, treated school districts and school boards as the alter ego of the

other. That state of affairs, combined with the requirement that a due process hearing be had before the school board, compels the conclusion that without regard to the constitutional validity of L.B. 511, in such an error proceeding it was and remains proper to name either the school district, its board, or both, as the party defendants.

Yet, if, as appellees assert, Zyburo did not obtain proper service of summons upon either the board or the district, the foregoing determination avails Zyburo nothing. The method of service is controlled by Neb. Rev. Stat. § 25-1903 (Reissue 1989), which provides, in relevant part, that upon the filing of a petition in error "summons shall issue and be served . . . as in the commencement of an action," but that "service on the attorney of record in the original case shall be sufficient."

The appellees contend that Kelley Baker was their attorney in the original case, that is, in the proceeding before the board, and not Edwin C. Perry, the attorney Zyburo served. They therefore argue that service upon Perry did not comply with the requirements of § 25-1903, failed to give them notice of the error proceeding, and failed to confer jurisdiction over either of them upon the court below.

Such, however, is not the case. The record reveals it was Perry who directed the case before the board against Zyburo and cross-examined Zyburo's witnesses. Baker was the hearing examiner for the board, whose function was, in his own words, "to assist in the running of the meeting and to make judgments regarding motions and issues of law subject to being overruled by the president of the Board of Education or the members of the Board of Education itself . . . ." Baker was therefore the arbitrator for the hearing and not the representative attorney for either the board or the district; it was Perry who served in that latter capacity. Consequently, service upon him was service on the attorney of record in the original case.

Our analysis is still not finished, for Zyburo's failure to stand on his original petition against the board, and election instead to file an amended petition against the district, raises an additional issue, the timeliness of his amended petition. Proceedings in error must be commenced within 30 days from the rendition of the final order or judgment concerning which

complaint is made by filing with the district court a petition and authenticated transcript containing the challenged order or judgment, and any other material related thereto which the petitioner wishes to have considered. See, Neb. Rev. Stat. §§ 25-1901, 25-1903, and 25-1931 (Reissue 1989); *Marcotte v. City of Omaha*, 196 Neb. 217, 241 N.W.2d 838 (1976). Failure to institute the proceeding within the stated time limitation bars the action. See *Moell v. Mennonite Deaconess Home & Hosp.*, 221 Neb. 168, 375 N.W.2d 618 (1985).

The petition against the board was filed within 30 days of the board's order discharging Zyburo; however, the amended petition against the district was not. Zyburo argues that the substitution of parties does not render the amended petition untimely, as the original petition naming the board gave the district notice of the suit within the 30-day limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 106 S. Ct. 2379, 91 L. Ed. 2d 18 (1986), holds that an amendment substituting parties relates back to the original complaint when a defendant has notice of the first complaint prior to the time bar. The plaintiffs in *Schiavone* attempted to serve defendant Fortune with complaints based on libel. The complaints were filed before the period of limitations had run, but served after the time had expired. Defendant, arguing plaintiffs failed to name the proper party in the actions, claimed the suits were against Fortune, a trade name for Time, Incorporated, the party which should have been named. After the actions were time barred, the plaintiffs amended the complaints to name Time, Incorporated, as defendant. The U.S. Supreme Court refused to permit plaintiffs to proceed with their actions because "neither Fortune nor Time received notice of the filing until after the period of limitations had run. Thus, there was no proper notice to Fortune that could be imputed to Time." 477 U.S. at 29. The Court stated, however, that the "[t]imely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party." *Id.* In regard to Fed. R. Civ. P. 15(c), the Court noted at 477 U.S. at 29:

Relation back is dependent upon four factors, all of which

must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

Although Nebraska does not have a rule similar to rule 15(c), this court has nevertheless acknowledged the similarity between rule 15(c) and its case law, and has looked to federal decisions for guidance. See *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988) (holding that if the general facts upon which right to recover is based are the same, amendment relates back to original pleading). Thus, we have held that an amendment which substantially changes the nature of the claim or defense is not permitted. See *Malerbi v. Central Reserve Life*, 225 Neb. 543, 407 N.W.2d 157 (1987). We have also suggested that where the defendant is prejudiced and the statute of limitations has run, an amendment will not relate back to the time of the original filing. See, *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986); *Baker v. A. C. Nelson Co.*, 185 Neb. 128, 174 N.W.2d 197 (1970). In *Scottsbluff Typewriter Leasing v. Beverly Ent.*, 230 Neb. 699, 432 N.W.2d 844 (1988), plaintiff obtained a judgment against Beverly Enterprises Inc., the defendant named as the owner of the Scottsbluff Villa. The named defendant moved to quash execution of the judgment, arguing that Scottsbluff Villa was owned by Beverly Enterprises - Nebraska, Inc., not by Beverly Enterprises, Inc. The district court then sustained plaintiff's motion to amend the judgment in order to correct the name. We affirmed, holding that the record presented failed to show that the owner was misled by the designation of Beverly Enterprises Inc. as the defendant.

Thus, as Zyburo correctly argues, the keystone determining whether a change in party defendant relates back to the original pleading is whether the substituted party had notice of the suit within the period of limitations. Since at least for the purposes involved in this case the board and the district are one and the

same, service upon the board gave the district notice within the limitations period that it was a party to the action, and it was thus not prejudiced by the substitution of its name for that of the board.

The foregoing makes it unnecessary for us to determine the constitutional legitimacy of the process by which L.B. 511 was transformed from a bill dealing with rivers into one dealing with education. Neither is it necessary for us to determine whether the distribution of powers provision of Neb. Const. art. II permits the Legislature to designate the parties to a case and controversy. Nor are we required to review once again the efficacy of a legislative effort to retroactively breathe life into an expired judicial process.

Because the analyses required to resolve this present appeal did not require a detailed study of the bill of exceptions from the court below, it is unnecessary that we at this time take any action for the failure to have submitted a bill which complies with our rules. See *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). The bill includes 78 exhibits containing 527 sheets of paper tossed unbound into an envelope as a separate volume of the bill. Our rules require that exhibits be bound and placed in the bill of exceptions in the manner specified. See, Neb. Ct. R. of Prac. 5F(3) (rev. 1989); Neb. Ct. R. of Official Ct. Rptrs. 19f(3) (rev. 1989); *Langness v. "O" Street Carpet Shop*, 217 Neb. 569, 353 N.W.2d 709 (1984).

We recognize that the nonconforming portion of the bill of exceptions was not prepared in the court below but, rather, consists of the portion of the transcript prepared on behalf of the board, which contains a verbatim transcription of the oral testimony. However, our rules apply to all bills of exceptions filed in this court, no matter in what tribunal they or any portion of them may have been prepared. Neb. Ct. R. of Prac. 5I (rev. 1989); Neb. Ct. R. of Official Ct. Rptrs. 19i (rev. 1989). While the court below was not required to accept a transcript containing material not prepared in accordance with our rules, once it did so, it acquired the obligation to correct any deficiencies in the form of that material which became part of its bill of exceptions.

The lower court's order of dismissal is reversed and the cause

remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.