Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/29/2021 01:07 AM CDT

Bettye Davis, appellant, v.
Thomas Ridder, appellee.
___ N.W.2d ___

Filed August 6, 2021.    No. S-20-545.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews
   a grant of summary judgment de novo, viewing the record in the light
   most favorable to the nonmoving party and drawing all reasonable infer-
   ences in that party's favor.
2. \_\_\_\_: \_\_\_\_. An appellate court affirms a grant of summary judgment if
   the pleadings and admitted evidence show that there is no genuine issue
   as to any material facts or as to the ultimate inferences that may be
   drawn from the facts and that the moving party is entitled to judgment
   as a matter of law.
3. **Actions: Pleadings: Parties: Notice: Limitations of Actions.** The rela-
   tion of an amended pleading back to the original filing is dependent
   upon four requirements: (1) The basic claim must have arisen out of the
   conduct set forth in the original pleading; (2) the party to be brought in
   must have received such notice that it will not be prejudiced in main-
   taining its defense; (3) that party must or should have known that, but
   for a mistake concerning identity, the action would have been brought
   against it; and (4) the second and third requirements must have been
   fulfilled within the prescribed limitations period.

Appeal from the District Court for Douglas County: Timothy
P. Burns, Judge. Affirmed.

Ken A. Winjum for appellant.

Michael T. Gibbons and Raymond E. Walden, of Woodke &
Gibbons, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Bettye Davis filed a lawsuit against Thomas Ridder alleging that after he negligently failed to put his vehicle in park and entered a gas station, the vehicle rolled away, struck her vehicle, and injured her. Davis filed this lawsuit just before the statute of limitations expired, but soon thereafter, she discovered a problem: Ridder was the owner of the vehicle that struck hers, but someone else, Donald N. Limpach, Jr., was operating the vehicle just before it rolled away. Davis responded by filing an amended complaint. This time, she sued Ridder and Limpach, alleging that Limpach negligently failed to put the vehicle in park and that Ridder negligently failed to maintain it. The district court, however, found that both defendants were entitled to summary judgment. The district court determined that Limpach was entitled to summary judgment on statute of limitations grounds, because the evidence would not permit a finding that Davis' claim against him related back to the date of the initial complaint under Neb. Rev. Stat. § 25-201.02(2) (Reissue 2016). The district court determined that Ridder was entitled to summary judgment because Davis failed to submit evidence that he negligently maintained the vehicle. We agree that both defendants were entitled to summary judgment and therefore affirm.

## BACKGROUND

*Accident.*

On March 25, 2014, Davis was injured when her vehicle was struck by an unoccupied Dodge Neon (the Neon). After Limpach had parked the Neon at a gas station and gone inside, the Neon rolled downhill into the street, coasted over a median, and collided with Davis' vehicle.

*Complaint and Amended Complaint.*

On March 15, 2018, Davis filed a lawsuit against Ridder. She alleged that Ridder negligently failed to place the Neon in park and that she had been injured as a result.

On April 11, 2018, Davis filed an amended complaint, naming Ridder and Limpach as defendants. The amended complaint alleged that Ridder owned the Neon, but that Limpach, rather than Ridder, parked the Neon at the gas station and negligently failed to place it in park. Ridder was still named as a defendant in the amended complaint. It alleged that Ridder negligently failed to maintain the Neon.

*Limpach's Motion to Dismiss.*

Soon thereafter, Limpach moved to dismiss, contending that the claim against him was barred by the governing 4-year statute of limitations. See Neb. Rev. Stat. § 25-207 (Reissue 2016). In support of the motion to dismiss, he offered affidavits of Ridder and himself.

Ridder stated in his affidavit that he learned about the lawsuit on March 19, 2018, when a representative of his insurer contacted Ridder and told him that he had been sued regarding an accident on March 25, 2014, involving a car he owned at the time. Ridder stated that at that time, he did not discuss the specific allegations of the complaint and was not told the complaint alleged that he was the driver at the time of the accident. Ridder also stated that he received a copy of the complaint on March 24, 2018, and that he saw he was named as the only defendant in the lawsuit, but that he did not read the part of the complaint alleging that he was the driver at the time of the accident. He stated that on April 2, he learned for the first time that the complaint incorrectly named him as the driver at the time of the accident. Finally, Ridder stated in his affidavit that sometime between April 10 and 12, he learned Davis intended to file an amended complaint naming Limpach as a defendant, and that, at the request of the insurance representative, he contacted Limpach to pass on that information.

Limpach stated in his affidavit that between April 10 and 12, 2018, he spoke by phone with Ridder, the insurance representative, and the attorney retained to defend Ridder, each of whom told him that Davis either had filed or was going to file an amended complaint against him. Limpach stated that "[d]uring one or more of those calls," he was told for the first time that the original complaint named Ridder as the driver of the Neon at the time of the accident, but that the amended complaint would allege that he was the driver.

The district court granted the motion to dismiss. In its order, it explained that Limpach's statute of limitations argument depended on whether Davis' claim against him related back to the filing of the initial complaint under § 25-201.02(2). It concluded that Davis failed to allege facts indicating that, prior to the expiration of the statute of limitations period, Limpach was either aware of the lawsuit or knew or should have known that, but for a mistake regarding his identity, Davis would have sued him. Consequently, the district court found that the claim against Limpach did not relate back under § 25-201.02(2). The district court also denied Davis leave to amend the complaint. It considered the affidavits offered by Limpach and other evidence offered by Davis and determined that any amendment would be futile.

*Summary Judgment.*

Sometime later, Ridder moved for summary judgment. Davis opposed Ridder's motion for summary judgment and also asked the district court to reconsider its order dismissing Limpach. In Davis' motion asking the district court to reconsider its order dismissing Limpach, she stated that deposition testimony from Limpach indicated that he was aware of the lawsuit before the statute of limitations expired.

Depositions of Ridder and Limpach were received at a hearing on Ridder's motion for summary judgment and Davis' motion to reconsider the dismissal of Limpach. Ridder testified in his deposition that after he learned he had been sued, he

did not initially talk to Limpach because his attorney instructed him not to. He testified that by the time he spoke to Limpach about the lawsuit, Limpach already knew about it. Ridder testified this conversation probably did not take place until April 12 or 13, 2018.

Limpach was also asked in his deposition about when he learned about Davis' lawsuit. Contrary to Ridder's testimony, Limpach testified that he "possibly" spoke with Ridder "shortly after" Ridder learned of the suit. Limpach also testified that Ridder first informed him that he had been sued regarding the accident and that later, Limpach learned he was going to be named. Limpach also testified that after the accident, he talked to Ridder about whether Ridder's insurance would provide coverage for the accident.

Ridder and Limpach also testified in their depositions about the Neon and the accident. Ridder testified that he purchased the Neon and that Limpach's automobile repair company performed maintenance on it. Ridder explained that Limpach was using the Neon to run an errand for him on the day of the accident. According to Ridder, there was no evidence of any mechanical issues with the Neon's transmission prior to the accident. He did acknowledge that sometime before the accident, Limpach's repair company had replaced the clutch on the Neon because it had been "slipping." Ridder testified that the Neon was a reliable car, that he drove it both before and after the accident, and that after the accident, it performed as it had before.

Limpach testified that at the gas station, he turned off the Neon's engine, put the gear into reverse to keep it from rolling, filled the tank, and went inside the gas station. He was not outside when the Neon rolled away. Limpach testified that the Neon's gear was not defective. When asked if he had a theory on why the Neon rolled away from the gas station, Limpach acknowledged the possibility that he might not have put the Neon "all the way in reverse."

The district court entered an order granting Ridder's motion for summary judgment and denying Davis' motion to reconsider the district court's dismissal of Limpach. The district court concluded that Davis did not present evidence to establish a genuine issue of material fact as to whether Ridder properly maintained the Neon.

As for Davis' motion to reconsider, the district court acknowledged that after Limpach initially moved to dismiss and the district court received evidence outside the pleadings, it should have informed the parties that the motion to dismiss would be converted to a motion for summary judgment. The district court went on to reconsider its earlier order dismissing Limpach with the additional evidence offered on Davis' motion to reconsider. The district court found that Limpach was entitled to summary judgment on statute of limitations grounds and therefore overruled the motion to reconsider. It concluded that the claim against Limpach did not relate back to the filing of the initial complaint because there was no evidence that Limpach knew about the lawsuit or that the "wrong party was being sued" until after the statute of limitations period had expired.

Davis appeals.

## ASSIGNMENTS OF ERROR

Davis assigns three errors on appeal. She contends that the district court erred by (1) granting Limpach's motion to dismiss, (2) finding that Limpach was entitled to summary judgment, and (3) finding that Ridder was entitled to summary judgment.

## STANDARD OF REVIEW

[1,2] An appellate court reviews a grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Gonzales v. Nebraska Pediatric Practice*, 308 Neb. 571, 955 N.W.2d 696 (2021). An appellate court affirms a grant of summary judgment if the pleadings and

admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Id*.

## ANALYSIS

*Statute of Limitations.*

Davis' first two assignments of error concern the district court's conclusion that her claim against Limpach was barred by the statute of limitations. Davis contends that the district court erred when it granted Limpach's motion to dismiss and then when it overruled her motion to reconsider and found that Limpach was entitled to summary judgment.

Davis argues the district court erred by not converting Limpach's motion to dismiss to a motion for summary judgment and by ruling on the motion without giving Davis an opportunity to depose Ridder and Limpach. Davis is correct that because the district court received affidavits from Ridder and Limpach in support of Limpach's motion to dismiss, it should have notified the parties that the motion would be treated as one for summary judgment under Neb. Ct. R. Pldg. § 6-1112(b). Davis also has at least a plausible argument that the district court should have given her an opportunity to depose Ridder and Limpach and present evidence from those depositions in opposition to Limpach's motion. See, e.g., *Ichtertz v. Orthopaedic Specialists of Neb.*, 273 Neb. 466, 470, 730 N.W.2d 798, 803 (2007) (explaining that when court converts motion to dismiss to motion for summary judgment, court should give parties "reasonable opportunity to present all material made pertinent to such a motion" (internal quotation marks omitted)).

Although the district court should have converted Limpach's motion to dismiss to a motion for summary judgment and possibly should have given Davis the opportunity to depose Ridder and Limpach before ruling on it, any error in the district court's treatment of the motion to dismiss was cured when it

later ruled on Davis' motion to reconsider. There, the district court acknowledged that it should have analyzed the motion as one for summary judgment and went on to consider evidence Davis presented from the depositions of Ridder and Limpach in the course of concluding that Limpach was entitled to summary judgment on the statute of limitations issue. We thus direct our focus to whether that determination was correct.

There is no dispute that a 4-year statute of limitations applies to Davis' claim against Limpach. See § 25-207. Likewise, the parties agree that the statute of limitations began to run on the date of the accident, March 25, 2014. Because the original complaint naming only Ridder was filed within 4 years of that date but the amended complaint naming Limpach was not, the question of whether Davis' claim against Limpach is barred by the statute of limitations turns on whether the claim against Limpach asserted for the first time in the amended complaint relates back to the date of the filing of the initial complaint. Davis argues that the claim relates back under § 25-201.02(2). That statute provides:

> If the amendment changes the party or the name of the party against whom a claim is asserted, the amendment relates back to the date of the original pleading if (a) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, and (b) within the period provided for commencing an action the party against whom the claim is asserted by the amended pleading (i) received notice of the action such that the party will not be prejudiced in maintaining a defense on the merits and (ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

§ 25-201.02(2).

[3] Section 25-201.02(2) essentially codified our decision in *Zyburo v. Board of Education*, 239 Neb. 162, 474 N.W.2d 671 (1991). See *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952,

831 N.W.2d 696 (2013). In *Zyburo*, we adopted a rule set forth in the then-current Fed. R. Civ. P. 15(c) (Rule 15(c)) for the relation back of amendments substituting parties. See John P. Lenich, Nebraska Civil Procedure, § 15.10 (2021). We explained that under Rule 15(c), relation back was dependent upon four requirements: (1) The basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period. See *Zyburo, supra*. Section 25-201.02(2) allows for relation back if these same requirements are shown, but clarifies that the second and third requirements must be fulfilled "within the period provided for commencing an action" and does not grant an additional grace period for service of summons. See *Kotlarz v. Olson Bros. Inc.*, 16 Neb. App. 1, 740 N.W.2d 807 (2007).

The parties appear to agree that the substitution of Limpach as the party who parked the Neon at the gas station was an amendment "chang[ing] the party . . . against whom a claim is asserted" under the statute. Cf. *Gibbs Cattle Co., supra*. There also is no dispute that the claim against Limpach arose out of the same occurrence set forth in the initial complaint. The district court found, however, that there was no evidence that would allow for a finding that, within the limitations period, Limpach had notice of the action or knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

In our view, there appears to be a genuine factual dispute as to whether Limpach had notice of the action within the limitations period. The deposition testimony, viewed in a light most favorable to Davis, showed a discrepancy regarding whether Ridder informed Limpach about the lawsuit "shortly after" Ridder learned about it in mid-March, or sometime after the

limitations period expired. As Davis observes, the testimony of Ridder and of Limpach tends to conflict as to whether they discussed the suit "within the period provided for commencing an action." We find it unnecessary to dwell on this issue, however, because, as we will explain, we find there was no genuine issue of fact as to whether Limpach knew or should have known within the limitations period that, but for a mistake concerning his identity, he would have been sued.

We have not previously discussed or applied the mistaken identity requirement of § 25-201.02(2)(b)(ii). Its language, however, is substantially similar to language found in Rule 15(c), and we find the U.S. Supreme Court's decision in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010), exploring the meaning of that language, a helpful guide in understanding its Nebraska counterpart.

In *Krupski*, a passenger was injured on a cruise ship. She filed suit against Costa Cruise Lines, alleging it operated the ship and was responsible for her injuries. In fact, Costa Cruise Lines was merely a ticketing agent, and the passenger's ticket identified the operator of the ship as Costa Crociere S. p. A. After the statute of limitations expired, Costa Cruise Lines obtained summary judgment on the grounds that it did not operate the ship. When the passenger filed an amended complaint substituting Costa Crociere as the defendant, the trial court dismissed the complaint as untimely. The trial court concluded that the complaint did not relate back under Rule 15(c).

The 11th Circuit affirmed. It concluded that because the passenger's ticket informed her that Costa Crociere operated the ship, the passenger either knew or should have known of Costa Crociere's identity as a potential party. Consequently, the 11th Circuit concluded, it was appropriate to treat the passenger as having made a deliberate choice to sue one potential party over another rather than having made a mistake.

The U.S. Supreme Court reversed. It began by explaining that the 11th Circuit focused on the wrong party when it

concluded that the passenger knew or should have known that
Costa Crociere was the proper party. The Court explained:

> By focusing on [the passenger's] knowledge, the Court
> of Appeals chose the wrong starting point. The question
> under Rule 15(c)(1)(C)(ii) is not whether [the passenger]
> knew or should have known the identity of Costa Crociere
> as the proper defendant, but whether Costa Crociere knew
> or should have known that it would have been named as
> a defendant but for an error. [The rule] asks what the pro-
> spective *defendant* knew or should have known during the
> [relevant] period, not what the *plaintiff* knew or should
> have known at the time of filing her original complaint.

*Id.*, 560 U.S. at 548 (emphasis in original).

Later, the Court added that the relevant inquiry under Rule
15(c)(1)(C)(ii) "is what the prospective defendant reasonably
should have understood about the plaintiff's intent in filing the
original complaint against the first defendant." *Krupski*, 560
U.S. at 554.

The Court also clarified that a plaintiff can be aware of
a party's existence and still make a mistake regarding that
party's identity. It illustrated that point by observing that a
party would make a mistake concerning a proper party's iden-
tity if it knew a party existed but believed it to have the status
of another party or if it knew two parties existed but misunder-
stood the roles the parties played in the events giving rise to
the claim.

With this understanding in mind, the Court found that the
amended complaint related back. Costa Crociere did not chal-
lenge the district court's finding that it had notice of the
complaint during the relevant time period. And, because the
allegations within the complaint made clear that the passenger
intended to sue the entity that had operated the cruise ship,
Costa Crociere should have known that it was not named as
a defendant only because of the passenger's misunderstanding
about which entity operated the ship.

Under the reasoning of the U.S. Supreme Court's decision in *Krupski*, it appears that Davis made a mistake concerning the identity of the proper party when she filed the initial complaint naming Ridder as the driver of the Neon rather than Limpach. Even if Davis knew about the existence of both Ridder and Limpach, the initial complaint demonstrated a misunderstanding regarding the roles those parties played in the events giving rise to the accident. However, even if Davis made a mistake regarding the identity of the proper party, that would not compel a finding that her claim against Limpach relates back to the date the initial complaint was filed. Even if Davis made the requisite mistake, a question remains as to whether Limpach knew or should have known about that mistake during the limitations period. We turn to that question now.

Davis argues that there is a genuine issue of material fact as to whether Limpach knew or should have known before March 25, 2018, that, but for her mistake, he would have been sued. She relies on Limpach's deposition testimony that Ridder told him about the lawsuit "shortly after" he learned of it. She also notes that Limpach would have known that he had possession of the Neon when the accident occurred and points to evidence that, before the limitations period expired, Limpach asked Ridder if Ridder's insurance would provide coverage. Davis argues that if prior to the expiration of the statute of limitations, Limpach had expressed concerns about whether Ridder's insurance would provide coverage and knew that, despite his role in the accident, Davis had sued Ridder, then a reasonable finder of fact giving her the benefit of all reasonable inferences could conclude that Limpach knew or should have known before the statute of limitations expired that but for a mistake regarding his identity, he would have been sued.

We do not dispute that the evidence upon which Davis relies could allow one to conclude that Limpach knew or should have known that he was a possible defendant in a lawsuit filed by Davis regarding the accident. But in our view, this evidence alone does not tell us what Limpach knew or should have

known about *Davis' intent* in filing a lawsuit against Ridder. As the U.S. Supreme Court explained in *Krupski*, while the mistaken identity inquiry is appropriately focused on what the defendant knew or should have known, the question is what the defendant knew or should have known about the plaintiff's intent when filing the original complaint. *Krupski*, 560 U.S. at 553-54 ("the question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant").

Davis has not pointed us to any evidence which tends to show that Limpach knew within the limitations period that Davis intended to sue the person who last had control of the Neon before the accident. Although there is evidence that Limpach might have known before the limitations period expired that David had sued Ridder regarding the accident, there is no evidence that Limpach knew the specific allegations of Davis' complaint. To the contrary, the only possible source for Limpach's knowledge about the lawsuit before the limitation period expired was Ridder, and Ridder's affidavit testimony that he did not learn that he had been mistakenly named as the driver until April 2, 2018, is undisputed. In this respect, this case differs from *Krupski* where the defendant that the passenger added in the amended complaint was a related corporate entity to the original defendant and acknowledged that it had notice of the complaint during the relevant period.

Not only has Davis not pointed us to evidence that Limpach knew that Davis intended to sue the person who parked the Neon at the gas station, neither has she pointed us to evidence that Limpach should have known that Davis intended to do so. The fact that Davis had sued Ridder would not have informed a reasonable person in Limpach's position that Davis must have made a mistake of identity. Ridder was the owner of the Neon and therefore also a possible defendant. Even in the amended complaint, Davis named Ridder as a defendant on a negligent maintenance theory. The fact that Davis had sued Ridder

thus would not have informed a person in Limpach's position that Davis must have intended to sue the person who last had control of the Neon but failed to do so because of a mistake of identity.

Because Davis has not identified evidence tending to show that Limpach knew or had reason to know which party Davis intended to sue, we do not believe a reasonable fact finder could conclude that Limpach knew or should have known during the limitations period that, but for a mistake regarding his identity, he would have been sued. Accordingly, the amended complaint did not relate back and Limpach was entitled to summary judgment on statute of limitations grounds.

*Negligent Maintenance of the Neon.*

Davis next claims that the district court erred when it entered summary judgment in favor of Ridder. She contends that Ridder violated his duty as the owner of the Neon to ensure that it was in a reasonably safe condition before allowing it to be operated on public roads. She argues that because the Neon had previously experienced problems with the clutch and Ridder did not have maintenance records for it, there was a genuine issue of fact as to whether Ridder "failed to maintain the [Neon] to the point that the clutch and/or gear were faulty, causing [it] to roll." Brief for appellant at 17.

Even if it is assumed that Ridder was under the duty Davis describes, we find Ridder was entitled to summary judgment. Although the clutch on the Neon had previously experienced problems, Ridder had Limpach replace it and Ridder testified that there was no indication of problems with the transmission before the accident. He further testified that he drove the Neon after the accident and that it performed as it had before. Limpach also testified that he did not believe the clutch was defective. In contrast, Davis failed to identify any evidence that would support an inference that Ridder negligently failed to maintain the Neon. Ridder was entitled to summary judgment.

CONCLUSION

For the reasons set forth herein, we find that both Ridder and Limpach were entitled to summary judgment. Accordingly, we affirm.

AFFIRMED.

MILLER-LERMAN, J., concurring.

I concur in the outcome of the majority opinion. While generally I agree with the majority's statement of facts, I would note two additional sets of undisputed facts helpful to the analysis. First, Davis testified that immediately after the collision, Limpach, the operator of the Neon, crossed the street and essentially admitted that he had probably failed to properly put the Neon in gear when he parked and Limpach called Ridder who arrived at the scene of the collision and indicated to Davis that he was the owner of the Neon. Second, Davis' attorney swore in an affidavit that, despite incorrectly naming Ridder as the Neon's operator in the initial complaint, his files prior to the filing had accurately showed Limpach as the operator and Ridder as the owner/insured.

I would reach the same outcome as the majority, although as to Limpach, my reasoning differs with respect to whether the amended complaint relates back to the date of the original filing for purposes of the statute of limitations. I write separately on that issue. I would find that there was no "mistake concerning the identity of the proper party" as the term "mistake" is used in the relation back statute, Neb. Rev. Stat. § 25-201.02(2) (Reissue 2016) and end the analysis there. The majority seems to endorse the existence of a "mistake"; so that is where we differ.

Davis contends that the claim against Limpach in the amended complaint relates back to the original complaint. Because of my emphasis on the text of "mistake" in the statutory language, I repeat the relevant portion of § 25-201.02(2), which provides:

If the amendment changes the party or the name of the party against whom a claim is asserted, the amendment relates back to the date of the original pleading if (a) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, and (b) within the period provided for commencing an action the party against whom the claim is asserted by the amended pleading (i) received notice of the action such that the party will not be prejudiced in maintaining a defense on the merits *and (ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party*.

(Emphasis supplied.) Thus, the threshold issue under § 25-201.02(2)(b)(ii) is whether the amendment that changes the party or name of the party is due to "a mistake concerning the identity of the proper party." "Mistake" is a term of art.

We have acknowledged parallels between § 25-201.02(2), our relation back case law, and Fed. R. Civ. P. 15(c) (Rule 15(c)) jurisprudence to the extent the rules overlap. See, *Zyburo v. Board of Education*, 239 Neb. 162, 474 N.W.2d 671 (1991); *West Omaha Inv. v. S.I.D. No. 48*, 227 Neb. 785, 420 N.W.2d 291 (1988). The legislative history of § 25-201.02(2) bears out the Legislature's intent to model it after the federal rules. See Introducer's Statement of Intent, L.B. 876, Judiciary Committee, 97th Leg., 2d Sess. (Jan. 25, 2002) ("the Federal Rules of Civil Procedure [served] as a model"). For purposes of the issues presented by this case, § 25-201.02(2)(b)(ii) is equivalent to Rule 15(c)(1). Compare *Kotlarz v. Olson Bros., Inc.*, 16 Neb. App. 1, 740 N.W.2d 807 (2007) (acknowledging that Legislature's enactment of § 25-201.02(2)(b) superseded prior case law and Rule 15(c) and that Nebraska and federal law differ regarding the time by which amendment must be served). The text of § 25-201.02(2)(b)(ii), our case law thereunder, and the legislative history all direct us to apply the case law under Rule 15(c) with respect to the term "mistake."

This court has not expressly expounded on the term "mistake" as used in the "mistake concerning the identity of the proper party" requirement in § 25-201.02(2)(b)(ii). This case presents an opportunity to examine the differences between the categories of mistakes litigants attempt to correct in their amended pleadings.

Rule 15(c) jurisprudence identifies a few primary types of mistakes: misnomer cases, lack of knowledge cases, and mere mistake and inexcusable neglect cases. Of these, only the first type, misnomer cases, are typically considered a "mistake concerning the identity of the proper party" and the amendment is permitted to relate back.

Misnomer cases are the classic example of a mistake concerning identity of the proper party under Rule 15(c) and encompass such issues as incorrect spellings or form of corporate organization. Relation back is typically permitted. These cases often involve a mistake in the precision with which a party is named or related entities which through an identity of interest knew of the initial complaint. E.g., *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 542, 543, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010) (party initially identified as "Costa Cruise Lines" instead of "'Costa Crociere S. p. A.'"); *Morel v. DaimlerChrysler AG*, 565 F.3d 20, 22 (1st Cir. 2009) (party initially identified as "Daimler-Chrysler Corporation" instead of "DaimlerChrysler AG"); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 461 (4th Cir. 2007) (en banc) (party initially identified as "Praxair, Inc." instead of "Praxair Services, Inc."); *Pittman v. Foote Equip. Co.*, 1 Neb. App. 105, 107, 487 N.W.2d 584, 586 (1992) (party initially identified as "Foote Realty Company" and "Foote Tire Company," not "Foote Equipment Company" and "Robert L. Foote").

Another category of cases analyzed under Rule 15(c) comprises those in which the plaintiff is unaware of the identity of the defendant, and may name the defendant by a placeholder such as John/Jane Doe. Relation back is typically not permitted. In these "John/Jane Doe" cases, the amendment is not

within Rule 15(c), because the flaw in the complaint is caused by a plaintiff's lack of knowledge but not because of an error or mistake in the identification or naming of a defendant. See, e.g., *Ceara v. Deacon*, 916 F.3d 208 (2d Cir. 2019) (approving *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466 (2d Cir. 1995), post-*Krupski*); *Heglund v. Aitkin County*, 871 F.3d 572 (8th Cir. 2017) (cases collected); *Garrett v. Fleming*, 362 F.3d 692 (10th Cir. 2004).

A third category of cases comprises those in which the mistake in naming a party in the complaint, albeit a mistake, is not a mistake of identity encompassed by Rule 15(c). Relation back is typically not permitted. These cases include both simple mistakes and inexcusable neglect. There are several scenarios exhibited by this category, including the following: A plaintiff is aware of the purported misconduct of an individual and the role the individual played in the incident but is not required to sue the individual, a plaintiff makes a mistake in legal judgment and fails to name a party, and a plaintiff simply omits a known defendant. These are not "mistakes" under Rule 15(c). See, e.g., *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994) (where plaintiff is aware of misconduct of certain individual but is not required to sue that individual); *Harris v. Rambosk*, No. 2:18-cv-17-FtM-29MRM 2020 WL 6505036 (M.D. Fla. Nov. 5, 2020) (purported defendant well-known from the incident not named as defendant); *Lin v. Joedy*, 214 F. Supp. 3d 207 (W.D.N.Y. 2016) (attorney mistakenly naming wrong party where correct party known from incident, not "mistake" concerning identity of proper party); *Rendall-Speranza v. Nassim*, 107 F.3d 913 (D.C. Cir. 1997) (mistake in legal judgment not mistake in naming party). See, also, *Ferencz v. Medlock*, 905 F. Supp. 2d 656 (W.D. Pa. 2012) (attorney's mistake in choosing whom to sue is not mistake of identity). The instant case belongs to this third category, and because there was no "mistake" as used in § 25-201.02(2)(b)(ii), Davis cannot avail herself of the benefit of relation back.

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010), cited by the majority, is the leading case on the law of relation back and mistake, and its facts and dicta illustrate the nuance required to decide mistake cases. At its core, *Krupski* was a misnomer case in which the plaintiff sued "Costa Cruise Lines" instead of "'Costa Crociere S. p. A.'" and relation back was permitted. 560 U.S. at 542, 543. Most important, *Krupski* clarified that courts should evaluate the knowledge-of-mistake factor—if mistake there be—in Rule 15(c) from the point of view of the defendant. In doing so, *Krupski* described various potential "mistakes" and scenarios which were not "mistakes" for Rule 15(c) purposes.

The Supreme Court stated in *Krupski*: "When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." 560 U.S. at 552. In *Krupski*, the Supreme Court stated: "We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity." 560 U.S. at 549. The Court explained its rationale as follows:

> A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period *only* because the plaintiff misunderstood a crucial fact about his identity.

*Id*., 560 U.S. at 550 (emphasis supplied). In *Krupski*, the Court explained that a misunderstanding of a crucial fact about a defendant is a misunderstanding of what role the omitted defendant played.

The Supreme Court offered a hypothetical in *Krupski* in which it explained that a plaintiff could know of a party's existence and still make a mistake within the meaning of Rule 15(c) with respect to that party's identity. The hypothetical stated as follows:

A plaintiff may know that a prospective defendant—call him party A—exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010).

The plaintiff in *Krupski* fell into the description of the hypothetical, because although she knew of both entities, she did not know of the roles or status of the two entities. However, the instant case bears no similarity to the hypothetical in *Krupski*, because it is undisputed that Davis knew both the identities of the two prospective defendants and the existence of their differing roles as operator as distinguished from owner of the Neon from the very outset of the incident. Davis did not make the same type of nomenclature mistake as the plaintiff in *Krupski*, who was, for practical purposes, unaware of the defendants' confusing corporate identities.

Courts following the *Krupski* decision explain the difference between a mistake concerning identity, which allows relation back, and an ordinary mistake or negligent failure to add a party known to the plaintiff, which disallows relation back. For example, in a case where a plaintiff's amendment would add two additional defendants whose purported misconduct was known to the plaintiff and plaintiff was not required to sue all the individuals, a court concluded that the claims did

not relate back because the failure to name the defendants is considered by the court as "the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity." *Schoolcraft v. City of New York*, 81 F. Supp. 3d 295, 301 (S.D.N.Y. 2015) (quoting *Krupski, supra*). *Schoolcraft* summarized this type of filing situation as follows:

> Where a plaintiff is aware of the purported misconduct of certain individuals, and where a plaintiff "was not required to sue them . . . her failure to do so in the original complaint, in light of her obvious knowledge and the detailed nature of that pleading[] . . . must be considered a matter of choice, not mistake." *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir.1994); *see also Barrow*, 66 F.3d at 470 ("the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake"); *Abdell v. City of New York*, 05-CV-8453, 2006 WL 2620927, at *7 (S.D.N.Y. Sept. 12, 2012) ("Where a plaintiff fails to timely sue a potentially liable party despite incriminating disclosures made within the statute of limitations, the Court cannot find that a mistake was made for relation back purposes.").

81 F. Supp. 3d at 301.

In the instant case, Davis testified that after the collision, Limpach crossed the street and admitted that he had been operating the Neon and had failed to properly put it in gear when he parked. Limpach then called Ridder to the scene, and Ridder identified himself as the owner. The record shows that Davis had knowledge of the specific role of each defendant, as was clear from the affidavit sworn by Davis' attorney that acknowledged that in spite of the pleading, his files accurately showed Limpach as the operator and Ridder as the owner/insured. Limpach and Ridder disclosed their identities to Davis, and unlike the plaintiff in *Krupski*, there is no dispute in the record that Davis was not only aware of Limpach and Ridder generally, but also knew of and appreciated their

differing roles with respect to the Neon from the very outset of the incident. Further, there is no basis to presume that the inclusion of both Limpach and Ridder in the suit was necessary; the amended complaint offers several theories of recovery, each of which would not necessarily implicate *both* as prospective defendants.

Just as other courts have applied the equivalent portion of Rule 15(c), I would hold that under § 25-201.02(2)(b)(ii), a "mistake" does not include situations where, due to choice or inexcusable neglect, a plaintiff does not sue a party where the party's identity and role are known to the plaintiff within the limitation period. On the record before us, there is no possible inference from the evidence that Davis' exclusion of Limpach in the original complaint was a "mistake concerning the identity of the proper party" as understood under the threshold inquiry of § 25-201.02(2)(b)(ii). Accordingly, Davis' amended complaint adding Limpach filed after the statute of limitations cannot be afforded the benefit of relation back and Limpach is entitled to the benefits of repose. Ultimately, I agree with the majority that the district court correctly ruled that Davis' claims against Limpach are time barred under the 4-year limitations period provided by Neb. Rev. Stat. § 25-207(3) (Reissue 2016) and that Limpach was entitled to summary judgment.

CASSEL, J., concurring.

If this court were writing on a clean slate, I would agree with the reasoning of the majority opinion. But when the Legislature adopts a statute based on a federal rule which has already received a known and definite construction in federal courts, the Legislature is presumed to adopt the construction thus given.[1] On that basis, I join Justice Miller-Lerman's

---

[1] See, *McEwen v. Nebraska State College Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019); *Todd v. County of Box Butte*, 169 Neb. 311, 99 N.W.2d 245 (1959). See, also, John P. Lenich, Nebraska Civil Procedure § 1:4 (2020).

concurrence discussing "mistake concerning the identity of the proper party" to the extent the federal decisions cited therein either predate or are based on earlier decisions predating the Legislature's enactment of Neb. Rev. Stat. § 25-201.02 (Reissue 2016) in 2002.[2]

---

[2] See 2002 Neb. Laws, L.B. 876, § 2.